■ In the Matter of GIACOMO RUSSO, Also Known as JIM RUSSO, Appellant, v THOMAS C. JORLING, as Commissioner of Environmental Conservation, Respondent. [625 NYS2d 690] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Brown, J.), entered January 13, 1994 in Saratoga County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondent's motion to dismiss the declaratory judgment action and transferred the CPLR article 78 proceeding to this Court.

As a result of projects undertaken on a portion of petitioner's property that is classified as freshwater wetlands, including the construction of two ponds and a road, the excavation of two ditches and the placement of fill in several locations, petitioner was charged with 15 violations of ECL 24-0701 (1), which requires that a permit be obtained for activities that have the potential to affect wetlands. After a hearing, an Administrative Law Judge (hereinafter ALJ) found that petitioner had committed the acts charged without first securing a permit and that, contrary to petitioner's assertions, the activities in question were not within the scope of a statutory exemption applicable to described farming operations (see, ECL 24-0701 [4]). The ALJ recommended that petitioner be fined and directed to implement a remedial plan that involved dismantling several of the improvements he had constructed. Thereafter, respondent issued an order adopting the ALJ's findings and conclusions in their entirety, and imposing the recommended sanctions.

In this combined action and proceeding, petitioner seeks annulment of respondent's order and a declaration that, inter alia, respondent's regulations, to the extent that they define "filling" and "dredging", and require a permit for those undertakings even if performed for agricultural purposes, have no basis in the relevant statutes and narrow the scope of the agricultural exemption beyond what the Legislature intended. When petitioner rejected, as untimely, respondent's answer to the amended petition/complaint, which incorporated a motion to dismiss the declaratory judgment action, respondent moved

for an order extending the time to answer or, alternatively, compelling petitioner to accept the answer. Petitioner cross-moved for summary judgment. Supreme Court dismissed the declaratory judgment action on collateral estoppel grounds and denied petitioner's cross motion. We are now confronted with petitioner's appeal from this part of the resulting judgment, as well as the merits of the CPLR article 78 proceeding which was transferred to this Court pursuant to CPLR 7804 (g).

Before reaching the merits of petitioner's challenges to respondent's determination, it is necessary to resolve a procedural question. Petitioner maintains that Supreme Court should not have excused the late filing of respondent's answering papers; they were not served until March 25, 1993, some three weeks after the statutory deadline for responding to the declaratory judgment complaint which had been served by mail on February 5, 1993 (see, CPLR 3025 [d]; 2103 [b] [2]). Respondent argues that since the papers were filed more than five days prior to the return date of the CPLR article 78 petition, as required by CPLR 7804 (c), they were indeed timely. Even if petitioner is correct, however, at least to the extent that respondent's motion seeks dismissal of the declaratory judgment action, Supreme Court proceeded judiciously in implicitly granting respondent's motion to compel acceptance of the late pleading (see, CPLR 3012 [d]), for petitioner has suffered no significant prejudice as a consequence of the modest delay, which resulted not from deliberately dilatory behavior, but essentially from a confusing telephone conversation that led the Assistant Attorney-General to believe that petitioner's counsel had agreed to a brief extension of time (see, Ruppert v Ruppert, 192 AD2d 925, 926; Antonious v Muhammed, 188 AD2d 399; Beecher v State Farm Mut. Auto. Ins. Co., 186 AD2d 1012, 1013).

Nor did Supreme Court err in finding that the issues raised in the declaratory judgment portion of petitioner's pleading were, or should have been, advanced in the administrative hearing. Petitioner does not challenge the constitutionality of the relevant statutes or regulations, but merely argues that respondent misconstrued the governing laws in several respects (see, New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 204-205). Because these matters were, for the most part, raised before the ALJ, and hence could have been the subject of a CPLR article 78 petition seeking annulment of respondent's determination, we deem it appropriate to convert the declaratory judgment portion of this hybrid case

to a CPLR article 78 proceeding, rather than to dismiss it outright. Accordingly, we shall consider all of petitioner's claims, regardless of how denominated, to the extent that they were properly preserved for review.

Turning to the merits, we find petitioner's arguments unconvincing. Petitioner proposes that respondent's regulatory definition of "filling"—conduct explicitly excluded from the statutory exemption for farming (see, ECL 24-0701 [4])—as the depositing of "any soil, stones, sand, gravel, mud, rubbish or fill of any kind, including spoil resulting from dredging or draining activities" in the wetlands (6 NYCRR 663.2 [o]), is overly inclusive and effectively vitiates what the Legislature intended to be a broad exemption for agricultural pursuits. But the legislative history is otherwise. It indicates that the statute, as enacted, represents an attempt to carefully balance the potential damage that may be occasioned by unregulated use of wetlands against the perceived legitimate needs of farmers, taking into account that most agricultural activities present little likelihood of permanent damage.

As attested to at the hearing, the deposition of fill in wetlands can be extremely disruptive, to the point of permanently eliminating the salutary characteristics of the wetlands. This fact furnishes a rational ground for respondent's comprehensive definition of "filling", to which we are obliged to defer (see, Matter of James H. Rambo, Inc. v Jorling, 177 AD2d 577, 578).

Given the foregoing, and petitioner's admission that he performed or directed the deleterious acts with which he is charged, respondent's conclusions with respect to cause of action Nos. 1, 6, 7, 8, 9, 10, 12 and 15, all of which involved depositing a significant amount of fill, directly or indirectly, in the wetlands or the regulated adjacent area, are clearly soundly based. Moreover, while the imposition of a permit requirement for excavation, dredging, or other draining activities, undertaken for agricultural purposes and involving no substantial deposition of fill in a regulated area, would be contrary to the express statutory exemption (see, ECL 24-0701 [4]), respondent's finding that petitioner demonstrated no bona fide agricultural purpose for digging two ditches in the wetlands, which is amply supported in the record, justifies his conclusions with regard to cause of action Nos. 2, 3, 13 and 14.

Cause of action Nos. 4 and 5 fault petitioner for constructing two large ponds in the wetlands. Petitioner initially represented that he created the first pond so that he could keep ducks and geese, water his trees, and engage in fish farming,

or "aquaculture", and that the second was intended to be used solely for raising fish. With regard to these activities, petitioner insists that respondent wrongly refused to construe "agriculture" so as to encompass a modern aquacultural operation, an enterprise in which he ostensibly plans to engage. In view of the fact that a separate statutory exemption, of more limited scope, applies to aquaculture (see, ECL 24-0701 [3]), respondent's rejection of this suggested interpretation was not unreasonable; indeed, to adopt the construction advanced by petitioner would render this latter provision meaningless. Furthermore, bearing in mind the large size of the ponds (1.74 acres and 3.67 acres, respectively), and the incomplete and inconsistent evidence presented with respect to petitioner's planned use of them, respondent's findings—that petitioner's testimony explaining his reasons for constructing the ponds was not credible, and that, in any event, the ponds were excessively sized for their purported uses and thus did not constitute "reasonable use of water resources" (ECL 24-0701 [4])—provide an adequate basis for the conclusion that the ponds do not come within the scope of the agricultural exemption.

Respondent also found petitioner's construction of a pole barn in the wetlands, the subject of cause of action No. 11, to have been improper. Although the pole barn was built to provide shelter for waterfowl and to store grain, the ALJ found that because petitioner would not have been raising waterfowl had he not created the ponds in violation of the wetlands law, erection of the pole barn constituted a separate violation. This provides a reasonable basis for concluding that, under the circumstances, the pole barn had no legitimate agricultural purpose.

Petitioner's remaining arguments, including those aimed at the severity of the penalties prescribed, have been considered, and found wanting.

Cardona, P. J., Crew III, White and Casey, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as granted respondent's motion to dismiss the declaratory judgment action; said motion is denied, that portion of the petition/complaint is converted to a CPLR article 78 proceeding, and as so converted the determination is confirmed and the petition is dismissed in its entirety; and, as so modified, affirmed.