■ In the Matter of DAVID SUTHERLAND et al., Petitioners, v ROBERT C. GLENNON, as Executive Director of the Adirondack Park Agency, et al., Respondents. [634 NYS2d 259] —Cardona, P. J. Combined proceeding pursuant to CPLR article 78 and action for declaratory judgment (transferred to this Court by order of the Supreme Court, entered in Hamilton County) to, *inter alia,* review a determination of respondent Adirondack Park Agency which found that petitioners illegally filled certain wetlands.

In 1992, petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action challenging a determination of respondent Adirondack Park Agency (hereinafter APA) that petitioners had illegally filled wetlands. The matter has previously been before this Court on an appeal from a portion of an order by Supreme Court denying a motion to compel disclosure (157 Misc 2d 547). We dismissed the appeal on the ground that the appeal was from an intermediate order (209 AD2d 898). Thereafter, Supreme Court transferred the case to this Court pursuant to CPLR 7804 (g).

Before we reach the merits of petitioners' arguments, we

must first resolve certain procedural issues. Petitioners do not challenge the constitutionality of any statutes or regulations (*see, DiMiero v Livingston-Steuben-Wyoming County Bd. of Coop. Educ. Servs.*, 199 AD2d 875, *lv denied* 83 NY2d 756); rather, their petition claims only that the APA violated certain governing laws and the relief sought is annulment of the APA's determination (*see, Matter of Russo v Jorling*, 214 AD2d 863, *lv denied* 86 NY2d 705). Thus, the declaratory judgment portion of this hybrid case should have been converted to a CPLR article 78 proceeding (*see, supra*). Supreme Court did not specifically make that conversion in its order although its decision appears to implicitly reach this conclusion.

We next turn to respondents' procedural argument that the proper standard of review is not whether the determination was supported by substantial evidence (CPLR 7803 [4]), but whether it was arbitrary and capricious (CPLR 7803 [3]). If the latter standard applies, the matter should not have been transferred to this Court (*see, Matter of Hudson Riv. Fisherman's Assn. v Williams*, 139 AD2d 234). The arbitrary and capricious standard governs where agency action is taken without a hearing or where the hearing is discretionary or informational in nature (*see, supra*). Here, however, insofar as the determination under review was the result of a formal adjudicatory hearing required by regulation upon petitioners' request (*see*, 9 NYCRR 581.5 [b]), the appropriate standard of review is whether the determination was supported by substantial evidence (*see, Matter of Bevacqua v Sobol*, 176 AD2d 1). Thus, the transfer was appropriate.

Turning to the merits, the APA's determination was based on its finding that petitioners had violated the terms of a subdivision permit issued in November 1987 as well as certain freshwater wetland regulations (*see*, 9 NYCRR 578.2 [a]; 578.3 [n] [1] [iii]). Although the permit delineated six lots, only lot No. 5 is at issue.

It is undisputed that petitioners placed gravel in four areas on lot No. 5: (1) in an area adjacent to the residence located on a 3.5-acre portion of the lot, (2) on a causeway running between the 3.5-acre portion and a five-acre "island" on the lot, the latter of which is bounded by a lake on the north and east and by a nine-acre marsh on the south and west, (3) on a road transversing the "island", and (4) in an area at the eastern end of the "island". According to the APA's determination, the four areas that were filled were wetlands. Petitioners contend, however, that, according to the APA's permit, the four areas were not wetlands and they, therefore, did not engage in a

regulated activity. We agree and, accordingly, annul the determination.

The express findings of fact contained in the APA's permit establish that the four areas filled by petitioners were indeed not wetlands. In pertinent part, the permit required that: "8. Any regulated activity as defined by [9 NYCRR] 578.3 (n) * * * in or adversely affecting *the wetlands described in Finding of Fact No. 11* shall require prior [APA] review and approval. In simpler language, any future land use and development involving *these wetlands*, such as * * * filling * * * will require a permit from [the APA] * * *. *Findings of Fact*: * * * 4. * * * Lot 5 has 3.5 acres of *upland* surrounding the existing single family dwelling [located on it], approximately *9 acres of wetland* located inside the mean high water marks of [a brook and lake] and a 5 [plus or minus] acre 'island' located within the wetland area. * * * 11. The 9 [plus or minus] acre wetland on Lot 5 referred to in Finding of Fact No. 4 is an emergent marsh. There are also fringe wetlands located along the northerly portions of Lots 1 through 5 * * * which are also emergent marshes." (Emphasis supplied.) It is undisputed that petitioners did not place fill in the nine acres of wetland described in the permit. The 3.5-acre area, which was the first area filled, is clearly described as "upland". In addition, although the "island" is described as located "within the wetland areas", it is not described as *being* a wetland.

Although the APA relies on an official Freshwater Wetland Map which apparently shows the "island" to be in a wetland area, APA experts conceded that this map does not purport to delineate the exact boundaries of a wetland. Moreover, petitioners' permit was issued after the official map and it specifically described the wetlands on lot No. 5. APA experts also claimed that the permit incorrectly delineated the wetland areas and that, although the permit stated there were only nine acres, there were really 14 acres because the "island" (which consisted of five acres) was also a wetland area. These experts, however, gave inconsistent testimony as to whether the APA had accepted the permit as an accurate description. One expert conceded that at the time the permit was issued, the APA believed that there were only nine acres of wetland and that the "island" was *not* considered a wetland. This testimony reveals that the APA, in making its determination, simply disregarded the description set forth in the permit. Although the APA claims that the permit expressly authorized only the boundaries of the subdivision and was only meant to identify the wetlands in a general way, a reading of the permit

belies that assertion. The permit expressly directed petitioners to get prior APA approval for any future activity, such as filling, on the wetlands described therein. Petitioners, in our view, reasonably relied on the permit and never undertook any filling activities in the nine-acre area described as wetland in the permit. Petitioners were entitled to rely on the explicit terms ·of the permit. Under the circumstances of this case, they should not have been found guilty of violating either the permit or any applicable regulations in the absence of language in the permit that the areas at issue were indeed wetlands.

Respondents also contend that, by regulation, because the "island" was surrounded by wetlands, it was subject to regulation as a wetland. A reading of the pertinent regulation, however, indicates that this fact alone did not make the "island" a wetland unless there was a concomittant determination that "regulation * * * is necessary to protect and preserve the aquatic or semi-aquatic vegetation" (9 NYCRR 578.3 [k] [3]). Although the permit describes the "island" as being within a wetland area, it does not make the second finding that regulation as a wetland was required. Finally, although APA experts cited scientific evidence to support their claim that the areas at issue were indeed wetlands, there is no dispute that the APA never sought to modify the description of the wetlands as contained in the permit. Accordingly, the petition should be granted and the APA's determination annulled.

In view of this result, it is not necessary to address the parties' remaining contentions.

Mikoll, Casey, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is annulled, with costs, that portion of the petition/complaint seeking declaratory relief converted to a CPLR article 78 proceeding, and petition granted.