[621 NYS2d 539]

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Respondents, v MARY JO BANE, as Commissioner of Social Services of the State of New York, Appellant.

MEDICAL SOCIETY OF THE STATE OF NEW YORK et al., Respondents, v MARY JO BANE, as Commissioner of Social Services of the State of New York, Appellant.

First Department, January 17, 1995

## APPEARANCES OF COUNSEL

*Judy E. Nathan* of counsel *(Dennis C. Vacco, Attorney-General,* attorney), for appellant.

*Peter F. Nadel* of counsel *(David A. Florman* with him on the brief; *Rosenman & Colin,* attorneys), for New York City Health and Hospitals Corporation and others, respondents.

*Jay G. Safer* of counsel *(Rhonda Edwards* with him on the brief; *LeBoeuf, Lamb, Greene & MacRae,* attorneys), for Medical Society of the State of New York and others, respondents.

## OPINION OF THE COURT

ASCH, J.

Medicare is divided into two components, Part A and Part B. While Part A pays 100% of reasonable hospital expenses, Part B provides supplemental insurance benefits for out-of-hospital and other medical and health services. Enrollees in the program pay an annual deductible and a coinsurance fee of 20% for each service rendered under Part B.

Congress, recognizing that there were Medicare-eligible individuals who did not have the financial resources to enroll in the Part B optional Medicare coverage, provided as part of Medicaid that the States pay Part B Medicare insurance premiums for "dually" eligible poor and elderly patients, i.e., "cross-over" patients.

Prior to January 1, 1987, the State paid the entire 20% Medicare coinsurance amounts to plaintiffs and other providers for the provision of medical services to dual eligibles. However, on January 1, 1987, New York State amended its "Cross-Over" Regulations (18 NYCRR 360.10, recodified as 360-7.7, without substantive change, eff Mar. 1, 1989) to reduce or eliminate any Medicaid payments on behalf of dually eligible individuals for Medicare Part B services. This amendment resulted in the majority of Medicare Part B providers, such as plaintiffs herein, becoming unable to collect more than 80% of their reasonable costs or charges, incurred in the rendition of such services.

Specifically, the amended Regulations provided that when the State's Medicaid rate was lower than the Federal Medicare payment (80% of the Medicare-approved amount) for a particular service, which is almost always the case, no portion of the cost-sharing balance will be paid by the State, and that when the Medicaid rate or fee exceeded the Medicare payment, the cost-sharing amounts will be paid by the State only to the extent of the difference, thereby resulting in the State not reimbursing the full cost-sharing amounts in all cases under the amended Regulations.

As a result, various health providers, including the plaintiffs herein, commenced an action in the United States District Court for the Southern District of New York, seeking injunctive and declaratory relief and challenging the promulgation of the Cross-Over Regulations as being violative of the Medicare and Medicaid Acts.

The United States Court of Appeals for the Second Circuit, in a reversal of the District Court, held that the "Cross-Over Regulations'" payment limitations violated the Medicare and Medicaid Acts, and that under the Medicare and Medicaid Acts the providers were entitled to 100% of their reasonable costs or charges. It further directed that judgment be entered for the plaintiffs. (New York City Health & Hosps. Corp. v Perales, 954 F2d 854, cert denied — US —, 113 S Ct 461.) On June 3, 1992, the District Court, acting upon that direction of the Court of Appeals, vacated its earlier judgment and entered a final judgment which declared the Cross-Over Regulations "unlawful and null and void" to the extent they authorized the State to pay less than the full coinsurance amounts for dual eligibles. It also enjoined the State from implementing the Cross-Over Regulations, and directed the Commissioner of Social Services of the State of New York to make full payment

of the Medicare coinsurance amounts on and after the final judgment date, June 3, 1992.

After declaration of the Regulations' invalidity on June 3, 1992, the State declined to make any payments for claims submitted for services rendered before June 3, 1992, and took the position that the State was only required to make Cross-Over payments for services *on and after June 3, 1992,* and that claims for services made prior to June 3, 1992, when the Regulation was still presumptively valid would not be honored by the State.

As a result of the State's refusal to make such payments, plaintiffs commenced the underlying action seeking a declaration that the State's actions violated both the Medicaid Act and Social Services Law and seeking to enjoin the State from implementing or attempting to implement the Regulations with respect to claims for services made prior to June 3, 1992 and direct the State to make payments to plaintiffs for services rendered to Cross-Overs between January 1, 1987 and June 2, 1992.

Plaintiffs also moved in the Federal District Court to hold the State in contempt. The District Court granted plaintiffs' motion to intervene and enforce the judgment, rejecting the State's arguments that the Cross-Over Regulations were valid as to services rendered prior to the judgment, and holding that the Eleventh Amendment to the United States Constitution did not bar the injunctive relief requiring the State to pay all *timely* submitted claims for services rendered prior to June 3, 1992. *(See,* 833 F Supp 353.) The District Court noted, however, that it was making no determination as to whether claims would be timely under the State's billing regulation. An appeal of this ruling is presently pending in the Second Circuit.

In the present actions, seeking to declare unlawful and enjoin the State's present and ongoing refusal to pay coinsurance claims for services rendered prior to June 3, 1992 under the Regulations, and seeking to direct the State to pay the difference between the amount paid, if any, pursuant to the Regulations and the amount that would have been paid if the annulled Regulations had not been in effect, plaintiffs' complaints allege three causes of action: the first, challenging the State's present and ongoing violation of law from June 3, 1992 to date and its refusal to pay, on the basis of the unlawful Regulations, claims timely submitted after June 3, 1992 for

services rendered prior thereto, and the second and third causes of action challenging, in the alternative, the State's implementation of the Regulations prior to June 3, 1992 as violative of, respectively, Federal and State law.

The IAS Court granted plaintiffs' motions in both actions for summary judgment on the complaints, denied the State's motions to dismiss and cross motions for summary judgment, declared null and void at their inception the Cross-Over Regulations (18 NYCRR 360.10, now 360-7.7) of the State Medicaid program and the State's refusal to pay claims for Medicare Part B deductible and coinsurance (cost-sharing) amounts in full for services furnished on January 1, 1987 and continuing to "Qualified Medicare Beneficiaries", including persons eligible for benefits under the Medicare and Medicaid programs, and directed that the State reimburse plaintiffs in the consolidated actions Medicare Part B cost-sharing amounts in full for services furnished to dually eligible Medicare/Medicaid beneficiaries and other Qualified Medicare Beneficiaries on January 1, 1987 and continuing upon submission of such claims.

The first issue presented is whether the unlawful Cross-Over Regulations were invalid *ab initio* or only from June 3, 1992, when the Federal court first declared their invalidity. We agree with the plaintiffs that the Federal court has already made the determination that its previous injunction against the State applied to pre-June 3, 1992 services and that the Eleventh Amendment to the United States Constitution did not shield the State from its order to pay *pre-judgment* claims, *if* it was determined such claims were timely submitted (which the Federal court expressly did not decide) *(see,* 833 F Supp 353, *supra).* While not entirely free from doubt *(see, Lemon v Kurtzman,* 411 US 192 *[Lemon II]),* we expressly decline to decide this issue since such a determination by us is not necessary at this time. The issue is currently before the Second Circuit Court of Appeals as part of the State's appeal with respect to the District Court's determination that the Eleventh Amendment did not bar the award of injunctive relief as to the pre-June 3, 1992 services.

■ Assuming, arguendo, that the plaintiffs are correct in their assertion that the Cross-Over Regulations were void from their inception, we find, nevertheless, that the IAS Court erred in applying a six-year Statute of Limitations for the claims raised by plaintiffs, and should have applied the four-month Statute of Limitations set forth in CPLR 217.

Plaintiffs allege that the State has waived the four-month limitation applicable to CPLR article 78 proceedings by not asserting it in the IAS Court. However, in its motion for dismissal of the complaints, among other grounds, the State specifically moved for a dismissal on the ground that "the action is barred by the statute of limitations". While the State argued that the three-year Statute of Limitations governing actions on liabilities created or imposed by a statute barred pre-June 3, 1992 claims, plaintiffs were on notice that defendant contended the claims were untimely. The State is *not* presenting a new theory for the first time on appeal which requires the development of facts that the plaintiffs were deprived of an opportunity to submit at the IAS Court *(cf., Douglas Elliman-Gibbons & Ives v Kellerman,* 172 AD2d 307, 307-308, *lv denied* 78 NY2d 856). Instead, the State is simply offering a new legal argument for its continually maintained position that the claims are barred by the Statute of Limitations.

The IAS Court concluded that the complaints pled viable actions for declaratory judgment based on the continuing application of the Cross-Over Regulations and that the plaintiffs only sought incidental monetary relief. In so ruling and finding that the six-year Statute of Limitations applied, the court erred.

In a decision dated June 30, 1994, the Court of Appeals clarified the controlling principles of law applicable herein. "The proper starting point for determining which Statute of Limitations should be applied in a proceeding or action against a State or municipal governmental entity is this Court's 1980 decision in *Solnick v Whalen* (49 NY2d 224). In that case, the Court held that when the proceeding has been commenced in the form of a declaratory judgment action, for which no specific Statute of Limitations is prescribed, 'it is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought' in order to resolve which Statute of Limitations is applicable (49 NY2d, at 229; *cf., Koerner v State of New York,* 62 NY2d 442, 447 *[Solnick* rule does not govern when 'a specific limitations period is clearly applicable to a given action, (and) there is no need to ascertain whether another form of proceeding is available']). Only if there is no other 'form of proceeding for which a specific limitation period is statutorily provided' may the six-year catch-all limitations period provided in CPLR 213 (1) be invoked (49 NY2d, at 229-

230). In other words, if the claim could have been made in a form other than an action for a declaratory judgment and the limitations period for an action in that form has already expired, the time for asserting the claim cannot be extended through the simple expedient of denominating the action one for declaratory relief (49 NY2d, at 230; *accord, Press v County of Monroe,* 50 NY2d 695, 701). Of course, when the claim is one against a governmental body or officer, the form of action that immediately springs to mind is a proceeding brought under CPLR article 78, a traditional, and surely the most common, vehicle for challenging a governmental decision or action." *(New York City Health & Hosps. Corp. v McBarnette,* 84 NY2d 194, 200-201.)

In *McBarnette,* involving a declaratory judgment action challenging an aspect of the Medicaid reimbursement rate, the Court of Appeals noted the position of plaintiff therein that article 78 does not lie to challenge a legislative act and further held:

"The maxim that article 78 does not lie to challenge legislative acts is derived from the separation-of-powers doctrine which made the use of the judiciary's 'prerogative writ' unavailable as a vehicle for challenging an act of a legislative body * * * That same principle, however, has no application to the quasi-legislative acts of administrative agencies. With respect to those acts, there is no reason why article 78 review in the nature of 'mandamus to review' should not be available to the extent that the challenge fits within the language and accompanying gloss of CPLR 7801 and 7803 (3) * * *

"The nature of plaintiff's claim requires it to convince the court that defendants promulgated a rule affecting hospital rates that represented an irrational construction of the governing statutes. Such a claim is plainly encompassed within the grounds for mandamus to review set forth in CPLR 7803 (3), which includes 'whether a determination * * * was affected by an error of law or was arbitrary and capricious' *(see also,* NYSAC [78 NY2d 158] [claim that rate adjustment regulation was arbitrary because it was not based on empirical facts]). Additionally, since the claim concerns a quasi-legislative act of an administrative agency rather than a true legislative enactment, there is no sound basis for invoking the historical bar precluding use of the prerogative writ as a vehicle for reviewing true legislative acts, even though the regulation in question is indisputably one of general applicability. Accordingly, plaintiff's challenge could have been

brought in the form of an article 78 proceeding" *(supra,* at 203-205).

Plaintiffs did not commence the present actions until five and one-half years after the Cross-Over Regulations took effect. Plaintiffs in their complaints, after alleging the failure of the defendant to pay for pre-June 3, 1992 services, assert that this failure violates Federal and State law, and accordingly is "unlawful and invalid". These challenges, almost identical to the one made in *McBarnette (supra),* are premised on a showing that the Cross-Over Regulations are inconsistent with the governing statutes and are, therefore, irrational, arbitrary and capricious. Consequently, they are governed by the four-month Statute of Limitations set forth in CPLR 217 for article 78 proceedings, and these actions were untimely commenced.

Plaintiffs assert that *McBarnette (supra)* cannot be applied retroactively, since it established a new principle of law concerning the Statute of Limitations, and such a new principle should be applied prospectively only. The simple answer to this argument is that the *McBarnette* Court did *not* declare a new principle of law. Careful reading of the decision shows that the Court of Appeals only clarified and distinguished its past precedents without overruling or rejecting any of them. In fact, the Court reaffirmed the continued viability and "unquestionable validity of [the] line of cases" which plaintiff cited in support of its position *(supra,* at 201). It simply concluded that *"further analysis* is necessary because there remains *some confusion" (supra,* at 201; emphasis added). Further, the Court, in effect, emphasized the fact that no new rule of law was being expounded when it said: "We note that our holding with regard to the Statute of Limitations question presented here is *in accord* with the public policies identified in *Solnick v Whalen (supra,* at 232) and reiterated in *Press v County of Monroe (supra,* at 704)." *(Supra,* at 205; emphasis added.)

■ Even assuming that the Statute of Limitations applicable to article 78 proceedings does not apply herein, the IAS Court erred in finding that a six-year statute for declaratory judgment should be used instead of the limitation period of three years pursuant to CPLR 214 (2) "to recover upon a liability * * * created or imposed by statute". These actions were not timely commenced even using the more expansive time constraints of this latter statute. While the plaintiffs contend that their actions would be timely if CPLR 214 (2)

governed because the Statute of Limitations was tolled pursuant to CPLR 205 (a), plaintiffs' Federal action was terminated in their favor by "a final judgment upon the merits" (CPLR 205 [a]), and, therefore that tolling statute is not available herein.

■ The IAS Court also erred in finding that the State was estopped from claiming as a defense the fact that plaintiffs failed to comply with the provisions of 18 NYCRR 540.6 (a) in not submitting claims for payment within 90 days of the date the services were rendered. While the State provided instructions to providers such as plaintiffs' about the Cross-Over Regulations which noted that under certain specified conditions a claim "should not" be submitted, this was *not* a situation "where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice" *(Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662, 668). These instructions were given to providers to comply with the changed Cross-Over Regulations which limited the payment. Accordingly, plaintiffs and other providers who almost immediately challenged the legality of the changed Regulations in the Federal court were not lulled into any "reliance" by the instructions given them not to submit claims which would be barred by the Cross-Over Regulations. They were deterred by the Cross-Over Regulations themselves which barred payment. (In fact, it appears that at least one plaintiff *did* submit claims in compliance with 18 NYCRR 540.6 [a].)

Although these Regulations were later found to be in violation of statute, estoppel against a governmental agency is precluded when the agency is exercising its governmental functions *(Advanced Refractory Technologies v Power Auth.,* 81 NY2d 670, 677). Plaintiffs' remedy was to timely commence an article 78 proceeding challenging as arbitrary and capricious the exercise of that governmental function, i.e., the promulgation of the Cross-Over Regulations, as measured by the governing Federal and State statutes. We note that the Federal District Court held that:

"The 90 day regulation is an independent and valid ground upon which the Commissioner rightly may reject the claims. * * *

"Plaintiffs and the intervenors concede that they withheld claims beyond the 90 day period, but contend that they were

following the Commissioner's instructions. They assert that the Commissioner should not gain the benefit of the 90 day limitation period when it was he who announced that claims should not be submitted and would be denied if submitted. But these facts actually weigh against granting relief. The Commissioner's announcement that claims would be denied, combined with the withholding of claims beyond the 90 day period, resulted in injury to plaintiffs and the intervenors. That injury was complete no later than the expiration of the 90 day period. * * *

"A limitation period on submission of claims is an appropriate mechanism for a State to protect itself from uncertainty, and is consistent with the concern for State autonomy reflected in the Eleventh Amendment. Potential plaintiffs who wish to 'end run' the Eleventh Amendment by withholding claims pending a Court decision cannot challenge the limitation period that thwarts their strategy." *(New York City Health & Hosps. Corp. v Perales, supra,* at 360.)

While the issue in the Federal court was the date from which the Eleventh Amendment bars payment, these considerations discussed there apply with the same force to the issue of when the plaintiffs were required to begin a State action challenging the Cross-Over Regulations. Thus, the IAS Court erred when it found that the failure by the plaintiffs to submit timely claims was due to circumstances beyond their control, which is set forth in the pertinent regulation as an excuse for late submission of claims. The plaintiffs were not forestalled by extraneous circumstances from filing. They were attacking the validity of the underlying Cross-Over Regulations, and as suggested by the Federal District Court, obviously hoped to obviate any Eleventh Amendment issue in the Federal action by the "end run" of withholding their claims. This conscious litigation strategy does not preclude the courts in New York State from applying State limitations periods and other applicable State law. Accordingly, plaintiffs cannot submit claims not submitted in accordance with 18 NYCRR 540.6 (a) (1), i.e., within the latter of 90 days of the date of service or 30 days of receipt of payment from Medicare.

We note that our decision herein renders nugatory the attempt by plaintiffs to differentiate between the three causes of action in each complaint vis-à-vis the Statute of Limitations applicable to each.

Finally, we conclude that the result reached herein is not

only in accord with the case law and applicable statutes but also furthers the interests of justice and the public policy espoused by our Court of Appeals in this area. "A rule that requires those subject to regulatory decisions such as Medicaid rate-making to bring their challenges promptly facilitates rational planning by all concerned parties and ensures ' "that the operation of government [will] not be trammeled by stale litigation and stale determinations" ' *(Solnick v Whalen, supra,* at 232, quoting *Mundy v Nassau County Civ. Serv. Commn.,* 44 NY2d 352, 359 [Breitel, Ch. J., dissenting])." *(New York City Health & Hosps. Corp. v McBarnette, supra,* at 205-206.)

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Alice Schlesinger, J.), entered April 4, 1994, which, *inter alia,* granted plaintiffs' motions for summary judgment in both actions, should be reversed, on the law, without costs or disbursements, and the defendant's motions to dismiss the complaint and for summary judgment granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint, without costs.

SULLIVAN, J. P., WALLACH, KUPFERMAN and TOM, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered April 4, 1994, which, *inter alia,* granted plaintiffs' motions for summary judgment in both actions, reversed, on the law, without costs or disbursements, the defendant's motions to dismiss the complaint and for summary judgment granted.