*402 OPINION OF THE COURT
Ciparick, J.
Plaintiffs, Medicare and Medicaid services providers, obtained a Federal court judgment declaring invalid a regulation adopted by defendant Commissioner of the Department of Social Services which limited defendant’s responsibility for coinsurance payments incurred in connection with Medicare Part B services rendered to certain "dually eligible” elderly and poor patients. After the declaration of invalidity, plaintiffs submitted coinsurance claims for services rendered during the period when the invalidated regulation was in effect. Defendant refused to pay these claims. We must decide whether plaintiffs’ first cause of action challenging defendant’s refusal to pay their coinsurance claims is time-barred.
Medicare is a Federally funded and administered medical insurance plan for persons 65 years of age or older and certain disabled individuals (42 USC §§ 1395-1395ccc). Medicare consists of two components, Parts A and B. Part A is an inpatient hospital insurance plan that pays 100% of reasonable inpatient costs (see, 42 USC — 1395Í-4). Part B is a supplementary insurance plan that pays 80% of reasonable costs for other services not covered by Part A, including physician and hospital outpatient services (see, 42 USC §§ 1395j — 1395w-4 [j]). Enrollees in Part B pay an annual deductible and the remaining coinsurance fee of 20% of the reasonable costs or charges for services rendered.
Medicaid is a joint Federal and State funded system which subsidizes medical care for the poor, regardless of age (42 USC § 1396 et seq.). States participating in the Medicaid program establish a schedule of payment rates for various types of medical care. Health care providers who treat Medicaid patients must accept the scheduled rate as payment in full for services provided.
Medicaid and Medicare overlap because State Medicaid programs may pay Medicare Part B premiums, deductibles and coinsurance on behalf of individuals who are "dually eligible,” i.e., both elderly and poor. Congress recognized that poor Medicare-eligible individuals often do not possess the financial resources to enroll in the optional Part B Medicare program, which requires enrollees to pay insurance premiums, annual deductibles, and the 20% coinsurance amount. Consequently, the Medicare Act provides that a State may agree to pay Part B insurance premiums on behalf of poor elderly and *403 disabled individuals — known as "dual eligibles” or "crossovers” — and thus assist them in acquiring Part B coverage. The Federal Government provides funding to subsidize these State "buy-in” arrangements. New York has such a "buy-in” agreement with the Secretary of Health and Human Services.
Prior to January 1, 1987, New York State paid the entire 20% coinsurance amount for buy-in crossovers. Effective January 1, 1987, New York changed that practice by enacting the "crossover” regulation (18 NYCRR 360-7.7, originally codified as 360.10). The regulation provided that with respect to crossovers covered by Part B through a buy-in arrangement, New York would not make any coinsurance payments, except when the 80% of reasonable costs that Medicare pays is less than the Medicaid rate, in which case New York would pay the difference. Because the reasonable Medicare charge for a particular service was almost always more than the corresponding scheduled Medicaid fee for that service, providers were invariably unable to collect more than 80% of their reasonable costs or charges for treatment of crossover patients. The regulation also prohibited health care providers from collecting any money from the crossover patients themselves.
On December 19, 1986, defendant sent a letter informing health care providers of the new regulation and instructing them not to submit claims to Medicaid in the event the Medicare payment exceeded the Medicaid fee.

Perales I

In July 1987, plaintiffs New York City Health and Hospitals Corporation (HHC) and Medical Society of the State of New York (Medical Society) commenced an action in United States District Court, seeking injunctive and declaratory relief. Plaintiffs alleged that the crossover regulation violated the Medicare and Medicaid Acts. The District Court granted defendants’ motion for summary judgment dismissing the complaint. The United States Court of Appeals for the Second Circuit reversed and remanded to the District Court for entry of judgment in plaintiffs’ favor (New York City Health & Hosps. Corp. v Perales, 954 F2d 854, cert denied 506 US 972). The Court of Appeals held that the crossover payment limitations violated the Medicare and Medicaid Acts and that plaintiffs were entitled to recover 100% of their reasonable costs or charges (id., at 860).
On June 3, 1992, the District Court vacated its earlier judgment and entered a final judgment declaring the crossover *404 regulations "unlawful and null and void to the extent the same authorize or permit the State of New York to pay less than the full deductible and coinsurance liability incurred under * * * the Social Security Act for qualified Medicare beneficiaries, including persons dually eligible for benefits.” Defendant was "enjoined from implementing the [crossover] Regulations to the extent set forth above” and directed to "pay the full deductible and coinsurance liability incurred under Title XVIII of the Social Security Act.”
After the declaration of invalidity defendant complied with the judgment, but only for services rendered on or after June 3, 1992. Defendant took the position that the judgment did not require it to pay crossover coinsurance claims for services rendered prior to June 3, 1992, as that would constitute retroactive relief which Federal courts are prohibited from ordering under the Eleventh Amendment.

Perales II

On August 28, 1992, plaintiffs moved in District Court for an order holding defendant in contempt of the judgment. The District Court held defendant in contempt, concluding that the judgment entered on June 3, 1992 encompassed all claims properly submittable on that date, and that defendant’s policy was in violation of the judgment (833 F Supp 353, 362), The District Court later modified its opinion, finding that defendant was not in contempt inasmuch as the legal enforceability of the judgment was unclear under the Eleventh Amendment. However, the court stated that defendant was still obligated to pay all claims properly submitted after June 3, 1992 for services rendered prior to that date.
The United States Court of Appeals reversed the District Court’s order only to the extent the court applied the June 3, 1992 judgment retroactively (New York Health & Hosps. Corp. v Perales, 50 F3d 129). The Court of Appeals held that the Eleventh Amendment prohibited Federal courts from ordering defendant to pay retroactive awards to claimants.
The Instant State Litigation
On August 13, 1992, shortly before commencement of Per-ales II, plaintiffs HHC and certain hospitals commenced the first of these two actions to declare unlawful and enjoin defendant’s refusal to pay coinsurance claims for services rendered prior to June 3,1992. On September 1,1992, plaintiffs Medical Society and certain ambulance services commenced the second action, alleging the same causes of action and seek *405 ing the same relief. The two actions were consolidated. Plaintiffs’ first cause of action challenges defendant’s refusal to pay claims submitted after June 3, 1992 for services rendered between January 1, 1987 and June 2, 1992. The second and third causes of action allege, in the alternative, that defendant’s implementation of the crossover regulations prior to June 3, 1992 was violative of Federal and State law respectively.
Supreme Court granted plaintiffs’ motions for summary judgment on the complaints and ordered full payment of claims for services rendered between January 1, 1987 and June 2, 1992. The court concluded that because plaintiffs’ claim for declaratory relief was based on the continuing application of the coinsurance regulation, the cause of action accrued continuously. In addition, the court held that plaintiffs’ State law claims were subject to the six-year Statute of Limitations of CPLR 213 (1). Finally, the court concluded that the billing regulation’s 90-day limitation period could not be used to defeat plaintiffs’ right to reimbursement because the delayed submission of claims fell within the "circumstances outside the control of the provider” exception.
The Appellate Division reversed, on the law, and granted defendant’s motions for summary judgment dismissing the complaints. Relying on this Court’s decision in New York City Health & Hosps. Corp. v McBarnette (84 NY2d 194, 200-201), the Court concluded that even if plaintiffs were correct in their assertion that the crossover regulations were void ab initia, plaintiffs’ challenge to the regulation was governed by the four-month limitations period applicable to CPLR article 78 proceedings. The Appellate Division further held that Supreme Court erred in estopping defendant from relying on 18 NYCRR 540.6’s 90-day filing requirement as a defense.
First Cause of Action
Plaintiffs’ first cause of action alleges:
"The Medicaid Act provides ** * * and the U.S. Court of Appeals has so held (NYCHHC v Perales, 954 F2d 854 [2d Cir. 1992]), that a state Medicaid program must make payment of Medicare cost-sharing amounts in full on behalf of crossovers and other QMBs [Qualified Medicare Beneficiaries]. * * * As a consequence of the foregoing, Defendant’s failure and refusal to pay claims submitted or to be submitted after June 3, 1992 for Medicare cost-sharing amounts for services furnished to *406 crossovers and other QMBs between January 1, 1987 and June 2, 1992 violate [Federal and State law] * * * and accordingly are unlawful and invalid.”
Plaintiffs assert that this cause of action is not time-barred, because defendant’s billing regulation authorized them to make their reimbursement claims within 30 days of the June 3, 1992 judgment, and because the present actions were commenced within four months of defendant’s refusal to pay the claims. The billing regulation provides:
"Claims for payment for medical care, services or supplies furnished by any provider * * * must be initially submitted within 90 days of the date the medical care, services or supplies were furnished to an eligible person to be valid and enforceable against the department * * * unless the provider’s submission of the claims is delayed beyond 90 days due to circumstances outside the control of the provider. * * * All claims submitted after 90 days must be * * * submitted within 30 days from the time submission came within the control of the provider” (18 NYCRR 540.6 [a] [1]).
At the outset, it is undisputed that plaintiffs submitted claims for payment within 30 days of the June 3, 1992 judgment. In dispute is whether the delayed submission of claims for pre-June 3, 1992 services was permissible under the billing regulation as due to circumstances outside plaintiffs’ control. The crossover regulation, by its plain terms, foreclosed the possibility of recoupment of any coinsurance amount when the Medicare payment exceeded the Medicaid fee or rate. Indeed, defendant specifically instructed providers not to submit claims to Medicaid when the Medicare payment exceeded the Medicaid rate. Moreover, disregarding defendant’s "claiming instructions” constitutes an "unacceptable practice” that places providers at risk of being sanctioned (see, 18 NYCRR 515.2, 515.3). As Supreme Court aptly noted, "plaintiffs’ reliance on the new regulation itself and on the official instructions on how it should be followed was not only reasonable, it was the only lawful manner in which to proceed. [Plaintiffs] were explicitly told not to file claims and they did not.”
We agree that, the delayed submission of coinsurance claims was due to circumstances beyond plaintiffs’ control and that the billing regulation thus authorized them to submit their *407 claims within 30 days of the judgment declaring the coinsurance regulation invalid. The present actions were promptly commenced within four months of defendant’s refusal to pay the claims in July 1992, and no Statute of Limitations bar is conceivably applicable.
Defendant does not dispute plaintiffs’ assertion that it acted unlawfully in July 1992 in rejecting plaintiffs’ claims for payment. Instead, defendant takes the position that plaintiffs’ first cause of action accrued on January 1, 1987, when the coinsurance regulation went into effect. Defendant contends that plaintiffs were relegated to commencing an article 78 proceeding within four months of that date pursuant to New York City Health & Hosps. Corp. v McBarnette (84 NY2d 194, supra), because their first cause of action is in substance a challenge to the validity of the coinsurance regulation and such a claim could and should have been raised in an article 78 proceeding (see, id., at 205).
Defendant’s argument rests on a mischaracterization of plaintiffs’ first cause of action. The first cause of action is not, as defendant asserts, a challenge to the validity of the coinsurance regulation, but rather challenges the legality of defendant’s July 1992 refusal to pay retroactive coinsurance claims, rendering defendant’s reliance on McBarnette misplaced. Plaintiffs, within 30 days of entry of the June 3, 1992 judgment, submitted claims for payment for services rendered to crossover patients between January 1, 1987 and June 2, 1992. Defendant’s refusal to pay those claims was unlawful, as it was based on defendant’s continued application of the invalidated coinsurance regulation.
Nor does our recent decision in McBarnette dictate an earlier accrual date. McBarnette involved a disputed change in the method used to reimburse hospitals for services rendered to certain patients. Effective January 1, 1987, the defendants changed their existing per diem method of calculating reimbursement to a less favorable per case approach. On July 3, 1989, the Commissioner of Social Services advised hospitals that for patients whose hospital stays "straddled” the period before and after the January 1, 1988 effective date, reimbursement was to be calculated under the new per case method. This July 3, 1989 rate decision was timely challenged in court by the Hospital Association of the State of New York (HANYS) (see, Matter of Hospital Assn. v Axelrod, 165 AD2d 152, lv denied 78 NY2d 853). HHC was aware of the HANYS litigation but chose not to intervene or commence a separate suit. *408 The July 3, 1989 rate decision was ultimately found arbitrary and capricious and the defendants were ordered to repay to HANYS and its members any funds withheld or recouped pursuant to the invalidated rate decision (see, id.). HHC demanded a refund as well, but was refused. HHC commenced the Mc-Barnette declaratory judgment action within four months of that refusal.
This Court held that the declaratory judgment action, for which no specific Statute of Limitations is prescribed, was time-barred because it could have been brought in the form of an article 78 proceeding (McBarnette, supra, at 205). Indeed, HHC’s claim that the rate decision was unlawful and arbitrary and capricious, in that it had no foundation in the governing statutes, was the type of claim plainly encompassed by CPLR 7803 (id.). Furthermore, HHC "lost the right to challenge the validity of the underlying rate decision through its own inaction,” and "had no legal basis for its October 1991 post-HANYS demand for a refund of the moneys that had been recouped pursuant to the recently invalidated 'straddle patient’ policy” (id., at 206). Importantly, however, we noted that HHC’s complaint actually did assert a timely cause of action based on the defendants’ refusal of its demand for a refund, but that cause of action was without independent legal significance because the underlying claim upon which it was based was time-barred (id.).
In contrast with McBarnette, the instant plaintiffs not only asserted a timely cause of action based on defendant’s refusal of their demand for coinsurance payments, they also possessed a sound legal basis for that demand, grounded in their prompt and successful Federal court challenge to the validity of the underlying coinsurance regulation. Unlike HHC’s lack of diligence in McBarnette, these plaintiffs did not "sit on their existing rights pending the outcome of an early challenge brought by others” (id.). Rather, they diligently preserved a sound legal basis for their post -Perales I demand for retroactive coinsurance payments. Accordingly, the first cause of action is not time-barred under McBarnette.
In view of our conclusions, it is unnecessary to address the remaining causes of action in plaintiffs’ complaints.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court, New York County, reinstated.
*409 Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Levine concur; Judge Titone taking no part.
Order reversed, etc.