[683 NYS2d 209]

EFS MEDICAL SUPPLIES, INC., et al., Respondents, v MICHAEL J. DOWLING, as Social Services Commissioner of the State of New York, Appellant.

NEW YORK STATE PODIATRIC MEDICAL ASSOCIATION et al., Respondents, v BRIAN J. WING, as Acting Social Services Commissioner of the State of New York, et al., Appellants.

NEW YORK STATE PSYCHIATRIC ASSOCIATION, INC., et al., Respondents, v BRIAN J. WING, as Acting Social Services Commissioner of the State of New York, et al., Appellants.

F. RUSSELL KELLOGG et al., Appellants-Respondents, v BRIAN WING, as Acting Social Services Commissioner of the State of New York, Respondent-Appellant.

ROBERT I. APPEL, on Behalf of Himself and All Others Similarly Situated, Appellant-Respondent, v BRIAN J. WING, Individually and as Social Services Commissioner of the State of New York, Respondent-Appellant.

BENJAMIN C. LIFSHITZ, on Behalf of Himself and All Others Similarly Situated, Appellant-Respondent, v BRIAN J. WING, Individually and as Social Services Commissioner of the State of New York, Respondent-Appellant.

First Department, December 15, 1998

### APPEARANCES OF COUNSEL

*Vincent Leong* of counsel, New York City (*Dennis C. Vacco, Attorney-General*), for State appellants.

*Peter F. Nadel* of counsel (*David A. Florman* on the brief; *Rosenman & Colin, L. L. P.*, attorneys), for respondents in the EFS Medical Supplies, Inc. action bearing appeal number 908.

*Philip A. Greenberg* of counsel (*Wallman, Greenberg, Gasman & McKnight, L. L. P.*, attorneys), for respondents in the New York State Podiatric Medical Association action bearing appeal number 908A.

*Robert L. Schonfeld* of counsel (*Stein & Schonfeld*, attorneys), for respondents in the New York State Psychiatric Association, Inc. action bearing appeal number 908B.

*Craig A. Landy* of counsel (*Whitney North Seymour, Jr.*, and *Peter James Clines* on the brief; *Landy & Seymour*, attorneys),

for appellants-respondents in the F. Russell Kellogg action bearing appeal number 909.

*Joseph Opper* of counsel (*David J. Bershad* and *Robert P. Sugarman* on the brief; *Milberg Weiss Bershad Hynes & Lerach, L. L. P.,* attorneys), for appellant-respondent in the Robert I. Appel action bearing appeal number 910.

*Michael S. Egan* of counsel (*Mel E. Lifshitz* on the brief; *Bernstein Liebhard & Lifshitz,* attorneys), for appellant-respondent in the Benjamin C. Lifshitz action bearing appeal number 911.

### OPINION OF THE COURT

Tom, J.

This consolidated appeal arises from the State's refusal to pay Medicare cost-sharing claims to certain health care providers in connection with treatment of Medicare-eligible patients who, under former law, had also been eligible for Medicaid coverage of copayments and other amounts not covered by Medicare. After a 1987 New York regulation terminating the State's obligations for Medicare cost-sharing claims, discussed *infra*, was invalidated in 1992 by the Second Circuit, the State respondent paid medical providers for such claims for periods postdating the judgment. After a subsequent Court of Appeals ruling in favor of medical providers, the State paid parties to that action retroactively for the period between the 1987 promulgation of the regulation and its 1992 invalidation by the Federal court. Although the Medicaid/Medicare financing provisions have been aptly described as "among the most completely impenetrable texts within human experience" (*Rehabilitation Assn. v Kozlowski,* 42 F3d 1444, 1450 [4th Cir 1994], *cert denied sub nom. Metcalf v Rehabilitation Assn.,* 516 US 811), fortunately our task is a limited one. At issue is the State's refusal to pay present plaintiffs/petitioners, medical providers that were not parties to the prior State litigation, whose submission of claims did not comply with the regulatory time periods, and who filed this action well beyond the four-month Statute of Limitations set forth in CPLR 217.

Medicare was adopted to provide for people who are 65 years of age and older, as well as certain disabled persons, and is governed by title XVIII of the Social Security Act (42 USC §§ 1395—1395ddd) and administered by the Department of Health and Human Services. Part A of Medicare (42 USC §§ 1395c—1395i-4) is available automatically to Social Security retirement or disability recipients, and pays for 100% of rea-

sonable inpatient hospital costs of eligible enrolled persons. Part B (42 USC §§ 1395j—1395w-4), involved in the present dispute, is a voluntary program that provides supplementary insurance for enrollees, paying 80% of the reasonable costs of services not covered under Part A, including outpatient treatment and medical fees. Part B, more akin to standard insurance, requires enrollees to pay premiums and coinsurance costs (i.e., 20% of the "reasonable" covered medical costs), and reimbursements are subject to an annual deductible.

Medicaid is a cooperative State, as well as Federally, funded system devised to provide medical care for the needy, regardless of age (42 USC §§ 1396—1396v). Federal matching funding is provided to participating States that provide medical services to Medicaid patients (see, Harris v McRae, 448 US 297, 301 [1980]), subject to Federal guidelines (42 USC § 1396a [n]). The participating State establishes standard rates, which must be accepted as payment in full by participating medical providers for varying kinds of medical care.

Medicare and Medicaid overlap for some elderly-poor and, for present purposes, for their medical providers. Elderly-poor persons are "dual eligible" for Medicare as well as Medicaid. These "crossovers" generally do not assume costs once Medicare benefits run out. The Medicare Act provides for subsidies to States that pay Part B insurance premiums for the dually eligible persons, essentially qualifying them for Medicare Part B benefits at State expense. The New York Department of Social Services (DSS), the administrator of New York's Medicaid program, maintains such a "buy in" arrangement with the Secretary of Health and Human Services.

In New York prior to 1987, DSS paid not only premiums for Part B coverage but also assumed cost-sharing on behalf of elderly-poor that included the annual deductible and 20% of reasonable costs or charges beyond what Medicare covers (18 NYCRR former 360.10, now recodified at 18 NYCRR 360-7.7). In 1987, the Coinsurance Regulation was amended to eliminate the State responsibility for certain of these cost-sharing amounts. New York continues to pay premiums. Under the 1987 regulation, if the medical provider received a Medicare Part B payment (80% of reasonable costs or charges that Medicare reimburses) that equaled or exceeded the Medicaid rate for the treatment, the State declined to pay coinsurance costs and deductibles. Since the reasonable Medicare charges for a particular service almost always exceeded the corresponding scheduled Medicaid rate for the same service, providers

were invariably unable to collect more than 80% of their reasonable costs or charges for the treatment of crossover patients. The Regulation also prohibited Medicare providers from collecting any money directly from crossover patients themselves. Parenthetically, other similar interpretations during that time period were challenged by medical providers (*see generally*, *Pennsylvania Med. Socy. v Snider*, 29 F3d 886 [3d Cir 1994]; *Rehabilitation Assn. v Kozlowski*, 42 F3d 1444, *supra* [4th Cir 1994]; *Beverly Community Assn. v Belshe*, 132 F3d 1259 [9th Cir 1997]; *Haynes Ambulance Serv. v State of Alabama*, 36 F3d 1074 [11th Cir 1994]; *Dameron Physicians Med. Group v Shalala*, 961 F Supp 1326 [ND Cal 1997]; *Kulkarni v Leean*, 1997 US Dist LEXIS 15200 [WD Wis, June 23, 1997, Shabaz, J.]), becoming, as Congress noted, "the subject of some controversy" (HR Conf Rep No 105-217, 143 Cong Rec H6252 [July 29, 1997]).

The 1987 Coinsurance Regulation has led to a number of lawsuits by New York medical providers, starting with *New York City Health & Hosps. Corp. v Perales*, filed in Federal District Court in 1987. That action initially was dismissed on the basis that the New York regulation had not violated Federal Medicare and Medicaid law (1991 WL 41559 [SD NY, Mar. 16, 1991, Lowe, J.]). The Second Circuit reversed (954 F2d 854 [2d Cir 1992], *cert denied* 506 US 972), declaring the regulation to be invalid to the extent it reduced the State's cost-sharing obligations for crossovers. On remand to the District Court for entry of judgment on June 3, 1992, New York was directed to pay the cost-sharing amounts in full. New York did so, but only as to medical services rendered on or after June 3, 1992, the date of the judgment. New York relied on the Eleventh Amendment's prohibition against a Federal court ordering a State to provide retroactive relief, and interpreted the ruling to require only prospective relief for medical providers. New York's refusal to pay the *Perales* providers for the period between the January 1, 1987 effective date of the challenged regulation and the June 3, 1992 judgment also was litigated. Although the District Court directed retroactive payments, the Second Circuit eventually reversed, invoking the prohibition of the Eleventh Amendment (50 F3d 129).

After the June 3, 1992 *Perales* judgment, DSS sent notices, starting with a July 17, 1992 letter, to medical providers informing them that DSS would pay the full Medicare Part B cost-sharing amounts for claims for services rendered on or after June 3, 1992. These notices, discussed *infra*, are relevant to

the accrual date of subsequent claims for retroactive recovery of cost-sharing amounts that are governed by the CPLR article 78 four-month Statute of Limitations (CPLR 217) applicable to these declaratory judgment actions (*New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194).

It is also relevant that the New York regulation required that claims for payment must be submitted within 90 days of the date that the care or service was provided to an eligible person. If the provider's submission of a claim is delayed beyond the 90-day period due to circumstances beyond its control, then the regulation allows an additional 30-day period, dating from the time that the ability to file came within the provider's control (18 NYCRR 540.6 [a] [1]). Thus, the regulation also effectively imposes a limitations period for filing purposes.

As a result of the *Perales* ruling (50 F3d 129, *supra*), the New York City Health and Hospitals Corporation and other providers commenced State court actions, subsequently consolidated as *New York City Health & Hosps. Corp. v Bane* (index Nos. 22732/92, 24418/92), challenging the State's refusal to provide retroactive relief and to declare the State's continued implementation of the crossover regulation for the period prior to June 3, 1992 to be invalid.

In *Bane*, Supreme Court (Alice Schlesinger, J.) applied a six-year rather than four-month limitations period, found that the declaratory judgment actions were predicated on New York's continuing reliance on the challenged regulation to refuse payments, thus tolling the Statute of Limitations, and found that the State's own policies frustrated providers from timely making claims within the regulation's 90-day filing period. Supreme Court estopped the State from asserting the regulatory filing deadline. On the merits, the court granted summary judgment to plaintiffs and ordered full payments for the interim period. We reversed, relying on *New York City Health & Hosps. Corp. v McBarnette* (*supra*) to impose the four-month limitations period applicable to challenges to an administrative action, and we concluded that the aggrievement commencing the accrual period occurred in 1986 when DSS sent letters to providers informing them of the imminent regulatory change. We also found the 90-day filing period not to have been satisfied and on that basis, we found a basis for dismissal (*New York City Health & Hosps. Corp. v Bane*, 208 AD2d 97). The Court of Appeals reversed our ruling and reinstated the order and judgment of the motion court (87 NY2d 399). The Court of Appeals rejected the State's position that the actions accrued on Janu-

ary 1, 1987, the effective date of the regulation, finding, rather, that the challenge was to the July 1992 refusal by the State to pay the retroactive claims. Notable for the present appeal, the Court of Appeals timed the commencement of the four-month limitations period to that latter time period. The Court of Appeals also found that the State had interfered with providers filing claims until that time, such interference precluding application of the regulatory 90-day filing deadline. Indeed, defendant had specifically instructed providers not to submit claims to Medicaid when the Medicare payment exceed the Medicaid rate. Consequently, the Court of Appeals held, "[w]e agree that the delayed submission of coinsurance claims was due to circumstances beyond plaintiffs' control and that the billing regulation thus authorized them to submit their claims within 30 days of the judgment declaring the coinsurance regulation invalid. The present actions were promptly commenced within four months of defendant's refusal to pay the claims in July 1992, and no Statute of Limitations bar is conceivably applicable" (87 NY2d 399, 406-407, *supra*).

However, the ruling in *Bane* did not put an end to the question of the State's obligation to pay coinsurance claims for services that were rendered prior to June 3, 1992. Plaintiffs/ petitioners in the instant actions are providers who were neither plaintiffs in the *Bane* action nor members of the Medical Society of the State of New York (a *Bane* plaintiff) at the time the Court of Appeals rendered its decision on December 21, 1995. They now seek reimbursement from the State for full cost-sharing claims for services rendered from January 1, 1987 through June 2, 1992.

Plaintiff F. Russell Kellogg is a physician whose practice includes many elderly-poor who are both Medicare and Medicaid recipients. He brings this action individually and purportedly on behalf of other health care providers similarly situated. Plaintiffs Benjamin Lifshitz and Robert Appel also are physicians and participating providers in the Medicare/ Medicaid program who raise similar claims and also purport to act on behalf of a class. Plaintiff League of Physicians & Surgeons is a not-for-profit doctor-patient advocacy organization, which predicates its claim of standing upon the treatment of eligible elderly-poor by organization members during the relevant time period. The various plaintiffs in the "EFS Medical Supplies" action provide medical devices and services to patients who also are eligible for Medicaid coverage for medical costs that exceed the Medicare ceiling. Petitioner New York

State Psychiatric Association is a not-for-profit corporation whose members are engaged in the practice of psychiatry; various copetitioners in that action are individual physicians. Petitioner New York State Podiatric Medical Association, also a not-for-profit corporation, consists of members who practice podiatry, as do individually named copetitioners in that action.

The present consolidated actions, filed in and after 1994, temporally overlapped the *Bane* litigation. They raise similar claims, but are in an entirely different posture as far as limitations periods are concerned. The *Bane* decision inferentially identified June 3, 1992 as the date that filing came within control of the providers, and claims in the present case were filed more than 30 days thereafter. Moreover, although the parties dispute when final agency action was actually manifested, and some plaintiffs/petitioners contend either that there should be no limitations period or that it commenced only with the 1995 entry of the *Bane* ruling, or with DSS's subsequent letter limiting *Bane* relief only to the parties to that litigation, the present actions were commenced well beyond the four-month statutory limitations period, no matter what reasonable date of accrual is relied upon. Hence, as noted below, dismissal is required under either or both time periods.

On July 17, 1992, DSS, still relying on the Eleventh Amendment bar invoked in *Perales*, sent a notice to all Medicaid providers indicating that pursuant to the *Perales* ruling, cost-sharing payments would be made for claims for services provided *after* June 3, 1992. This was the same notice that precipitated the *Bane* litigation. That notice recommended that "providers should submit all claims for dually-eligible recipients in a timely fashion." The State relies on this notice's implicit rejection of responsibility for pre-*Perales* claims to constitute a notice of final agency action rejecting retroactive obligations. Plaintiffs/petitioners contend that the absence of an affirmative declaration to that end vitiates this letter as notice for purposes of commencing the four-month limitations period. Even the IAS Court, although finding ambiguity, found that by the July 17th letter, DSS "inferentially * * * was declining to pay for pre-June 3 services." DSS's October 1992 Medicaid Update, sent to all providers, repeated the same information. The Third Department recently addressed this identical issue, finding the July 17, 1992 letter to providers to constitute a "clear and unambiguous determination," and dismissed an action commenced in 1996 (*Matter of New York State Radiological Socy. v Wing*, 244 AD2d 823, 825, *lv denied* 92 NY2d 802). There is no

material distinction between that case and the one presently before us, and, in view of *Bane*'s implicit adoption of the July 17, 1992 letter as an accrual date for the four-month Statute of Limitations, we find the reasoning persuasive. Hence, dismissal is required pursuant to CPLR 217.

Medicaid providers understood the import of that notice. By letter dated June 15, 1992, the Hospital Association of New York, a *Bane* plaintiff, advised its members that the *Perales* Federal court judgment could not be relied on for reimbursement of retroactive claims. Specifically, that letter "strongly advise[d] that your retroactive claims be submitted * * * for processing. * * * It is important that all claims for the period 1/1/87 - 6/3/92 be submitted * * * promptly and, IN ANY EVENT NO LATER THAN JULY 3, 1992" (emphasis in original). The Medical Society of the State of New York, another *Bane* plaintiff, notified its members that DSS would refuse to pay retroactive claims, and "urge[d] that physicians begin submitting claims to the State Medicaid Programs as soon as possible".

On August 10, 1992, DSS responded to some providers' inquiries with a notice stating "the Department has determined that it is required to make crossover payments only for services delivered on or after June 3, 1992. * * * Until such time as the courts direct us otherwise, there is no plan to make crossover payments for services prior to June 3, 1992." This remained the State's position until the 1995 *Bane* ruling by the Court of Appeals. The very filing of the *Bane* actions in August and September of 1992 underscores the finality of the State's position, and the effectiveness of the notice, during the summer of 1992. The Court of Appeals in *Bane*, utilizing a four-month limitations period commencing with the State's July 1992 refusal to pay on retroactive claims as constituting State action, rejected the State's Statute of Limitations defense, explicitly recognizing the exclusivity of CPLR 217. It must be recalled that the present action was not commenced until 1994.

Congressional intent as bearing on these issues, in any event, is now clearer than it was at the time of the *Perales* ruling that was the predicate for *Bane*. Subsequent to the *Bane* ruling, Congress revisited the Medicaid statute, specifically to resolve the very issue litigated in *Bane* and raised again in this case. On August 5, 1997, as part of the Balanced Budget Act of 1997, a law captioned "CLARIFICATION REGARDING STATE LIABILITY FOR MEDICARE COST-SHARING" was signed into law (Pub L 105-33 § 4714 [a]) specifically to clarify State liability for Medicaid cost-sharing. The amendment to the Medicaid/

Medicare provisions of section 1396a (n) of the Social Security Act was intended to nullify *Perales*-type case law (*see, e.g., Haynes Ambulance Serv. v State of Alabama*, 36 F3d 1074, *supra* [11th Cir 1994]). The new provision clarifies that States are not required to pay deductibles, coinsurance or copayments for Medicare cost-sharing "to the extent that payment under title XVIII for the service would exceed the payment amount that otherwise would be made under the State plan under this title for such service if provided to an eligible recipient other than a medicare beneficiary" (Pub L 105-33 § 4714 [a] [2], adding 42 USC § 1396a [n] [2]). This clarification by its terms applied to claims preceding the amendment for which litigation was pending on the effective date of the amendment. The effective date thus applies to the current cases for which an appeal is pending from the May 16, 1997 order and judgment.

Notably, Congress formally characterized the provision to be a "CLARIFICATION", denoting a statement of legislative intent to be accorded great weight in applying the original statute, *ab initio* (*see, Loving v United States*, 517 US 748 [1996]; *United States v Winstar Corp.*, 518 US 839 [1996]). In view of the often opaque nature of this Federal statute, such congressional clarification is entitled to "real deference" as "a statement of what Section 1396a (n) has meant all along" (*Beverly Community Hosp. Assn. v Belshe*, 132 F3d 1259, 1266, *supra* [9th Cir 1997]), a view that we share. Since Congress has now imparted clearer meaning retroactively, rather than merely declaratively, to the Federal provision upon which the 1987 New York regulation was predicated, the necessary conclusion is that *Perales* was wrongly decided, and the substance of plaintiffs/petitioners' claims necessarily is undermined.

Plaintiffs/petitioners argue that the 1997 clarification has no bearing on the present litigation in that, *inter alia*, it is not self-implementing, and New York's implementation of it in a new regulatory amendment cannot be predicted. Nevertheless, whatever merit the technical claim, that the recent Federal clarification is not self-implementing, may or may not have, the latter part of the plaintiffs/petitioners' point is meritless: it requires no great judicial ingenuity to construe how New York will implement it. After all, the unmistakable import of the 1997 clarification is that the 1987 New York regulation had not run afoul of congressional intent.

However, since we dismiss the complaints and petitions on other grounds, we need not reach the question whether more would have to be done by New York to implement this congres-

sional clarification. Finally, in view of the foregoing, the issue of class certification is academic.

Accordingly, the orders and judgments (one paper in each action), Supreme Court, New York County (Alice Schlesinger, J.), in the Kellogg, Appel and Lifshitz actions, entered May 14, 1997, May 21, 1997 and July 3, 1997, respectively, denying the State defendant's motions to dismiss, granting summary judgment to the respective plaintiffs, directing the State to pay plaintiffs' Medicare Part B cost-sharing amounts in full for items and services that were furnished to dually eligible Medicare/Medicaid beneficiaries and other Qualified Medicare Beneficiaries between January 1, 1987 and June 2, 1992, upon submission of such claims, but denying those plaintiffs class certification, each should be modified, on the law, to grant summary judgment dismissing the complaint, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendant in actions bearing index numbers 110036/96, 105652/96 and 109158/96 dismissing the complaint as against it. The order and judgment (one paper) of the same court and Justice, in the EFS action, entered May 16, 1997, also granting summary judgment to plaintiffs and directing payment of similar Medicare Part B cost-sharing amounts as noted above, should be reversed, on the law, without costs, to grant summary judgment dismissing the complaint. The Clerk is directed to enter judgment in favor of defendant in the action bearing index number 107540/94 dismissing the complaint. The orders and judgments (one paper in each action) of the same court and Justice, in the New York State Podiatric Medical Association and the New York State Psychiatric Association actions, entered May 9, 1997 and August 15, 1997, respectively, each also denying the State respondent's motion to dismiss, granting summary judgment to petitioners and directing cost-sharing payments to petitioners as noted above, should be reversed, without costs, the petitions denied and the proceedings dismissed.

MILONAS, J. P., ELLERIN, MAZZARELLI and SAXE, JJ., concur.

Orders and judgments (one paper in each action), Supreme Court, New York County, in the Kellogg, Appel and Lifshitz actions, entered May 14, 1997, May 21, 1997 and July 3, 1997, respectively, each modified, on the law, to grant summary judgment dismissing the complaint, and otherwise affirmed, without costs; order and judgment (one paper), same court, in the EFS action, entered May 16, 1997, reversed, on the law, without costs, to grant summary judgment dismissing the com-

plaint; and orders and judgments (one paper in each action), same court, in the New York State Podiatric Medical Association and the New York State Psychiatric Association actions, entered May 9, 1997 and August 15, 1997, respectively, reversed, without costs, the petitions denied and the proceedings dismissed.