OPINION OF THE COURT
 

 Titone, J.
 

 This appeal raises the question we left open in
 
 New York State Assn, of Counties v Axelrod
 
 (78 NY2d 158, 166)
 
 (NY-SAC):
 
 what Statute of Limitations should be applied to declaratory judgment actions brought to challenge promulgated Medicaid reimbursement rates on the ground that they are irrational or affected with error of law. Reaffirming the principles that were articulated in such cases as
 
 Solnick v Whalen
 
 (49 NY2d 224), we hold that in the circumstances presented here the four-month Statute of Limitations for proceedings against a body or officer is applicable
 
 (see,
 
 CPLR 217).
 

 Plaintiff, which operates both hospitals and residential care facilities, commenced this declaratory judgment action to challenge two separate aspects of its Medicaid reimbursement rate. The first part of plaintiff’s challenge sought relief from defendants’ effort to use a "recalibration adjustment” that was promulgated in December 1991 to calculate its residential-care facility rates for the rate years between 1989 and 1991 (10 NYCRR 86-2.31 [a]). The proper resolution of this issue is governed by
 
 Matter of Jewish Home & Infirmary v Commis
 
 
 *199
 

 sioner of N. Y. State Dept, of Health
 
 (84 NY2d 252 [decided herewith]), in which we hold that Public Health Law § 2807 (7) (a) prohibits such retroactive rate-making.
 

 The second part of plaintiffs challenge involves a disputed change in the manner in which hospitals are reimbursed for services provided to certain of their patients. Effective January 1, 1988, defendants replaced their existing per-diem method of computing reimbursement with a new per-case approach. Services for patients whose hospital stays "straddled” the period before and after the new system’s effective date were initially to be reimbursed under the former perdiem computation method. However, by letter dated July 3, 1989, the Commissioner of Social Services, after consultation with the Department of Health (DOH) and the Division of the Budget, advised hospitals providing service to Medicaid recipients that only those "straddle” patients categorized as needing "acute” care would be subject to the apparently more favorable per-diem rate. Services to "alternative level of care” patients, i.e., those who could be cared for in residential nursing facilities, would be reimbursed on the newer per-case basis. Reimbursement amounts in excess of the allowable rates that had already been paid were to be recouped through reductions in current payments.
 

 The July 3, 1989 rate decision was challenged in a timely CPLR article 78 proceeding brought by the Hospital Association of New York State
 
 (Matter of Hospital Assn, v Axelrod,
 
 165 AD2d 152 [Feb. 14, 1991],
 
 lv denied
 
 78 NY2d 853)
 
 (HA-NYS).
 
 Although it was aware of the
 
 HANYS
 
 litigation, plaintiff, which is not a member of the Hospital Association, decided not to intervene or commence a separate suit, choosing instead to rely on that organization’s efforts to obtain relief.
 

 The Appellate Division held in
 
 HANYS
 
 that the statute governing reimbursement for "straddle patients” did not leave room for distinguishing between "acute care” patients and "alternative level of care” patients. Accordingly, the policy was deemed arbitrary and unlawful (165 AD2d, at 154-155). As a result of that decision, defendants, who represent agencies responsible for administering the Medicaid program, were ordered to repay to the Hospital Association and its members any funds that had been withheld or recouped pursuant to the invalidated decision.
 

 In October of 1991, plaintiff applied for a refund of moneys
 
 *200
 
 that defendants had recouped pursuant to the rule invalidated in
 
 HANYS.
 
 After it was advised that defendants did not intend to grant such a refund, plaintiff promptly brought the present proceeding in February 1992 to challenge both the July 3, 1989 rule and the more recent refusal of its refund request.
 

 On cross motions for summary judgment, the Supreme Court ordered defendants to recalculate plaintiff’s nursing home reimbursement rate without regard to the "recalibration adjustment.” With respect to the claims that were based upon the invalidated "straddle patient” rate determination, Supreme Court concluded that the four-month Statute of Limitations for CPLR article 78 proceedings was applicable and that, accordingly, those claims were time-barred.
 

 On plaintiffs appeal, the Appellate Division affirmed the first aspect of Supreme Court’s ruling, but reversed on the latter point. Holding that the action was, in reality, one for reimbursement under title XIX of the Social Security Act (42 USC § 1396
 
 et seq.),
 
 the Appellate Division cited the Second Circuit’s decision in
 
 Hollander v Brezenoff
 
 (787 F2d 834), applied the three-year limitations period for actions to recover on a liability imposed by statute (CPLR 214 [2]) and ruled the action timely. Inasmuch as the merits had previously been resolved in
 
 HANYS (supra),
 
 the Court granted plaintiff summary judgment on its claim for a refund. This appeal, taken by permission of this Court, ensued.
 

 Initially, we note that the Appellate Division’s reliance on
 
 Hollander v Brezenoff (supra)
 
 was misplaced. The only issue in
 
 Hollander
 
 was whether a proceeding to enforce a social service agency’s obligation to pay a Medicaid provider was governed by the six-year limitations period for actions on a contractual obligation (CPLR 213 [2]) or was instead governed by the three-year period for actions on a liability imposed by statute (CPLR 214 [2]). The court was not called upon to consider whether the shorter four-month limitations for proceedings against a body or officer (CPLR 217) was applicable. Consequently, its holding has no persuasive significance here.
 

 The proper starting point for determining which Statute of Limitations should be applied in a proceeding or action against a State or municipal governmental entity is this Court’s 1980 decision in
 
 Solnick v Whalen
 
 (49 NY2d 224,
 
 supra).
 
 In that case, the Court held that when the proceeding has been commenced in the form of a declaratory judgment action, for
 
 *201
 
 which no specific Statute of Limitations is prescribed, "it is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought” in order to resolve which Statute of Limitations is applicable (49 NY2d, at 229;
 
 cf., Koemer v State of New York,
 
 62 NY2d 442, 447
 
 [Solnick
 
 rule does not govern when "a specific limitations period is clearly applicable to a given action, (and) there is no need to ascertain whether another form of proceeding is available”]). Only if there is no other "form of proceeding for which a specific limitation period is statutorily provided” may the six-year catch-all limitations period provided in CPLR 213 (1) be invoked (49 NY2d, at 229-230). In other words, if the claim could have been made in a form other than an action for a declaratory judgment and the limitations period for an action in that form has already expired, the time for asserting the claim cannot be extended through the simple expedient of denominating the action one for declaratory relief (49 NY2d, at 230;
 
 accord, Press v County of Monroe,
 
 50 NY2d 695, 701). Of course, when the claim is one against a governmental body or officer, the form of action that immediately springs to mind is a proceeding brought under CPLR article 78, a traditional, and surely the most common, vehicle for challenging a governmental decision or action.
 

 Plaintiff contends that an article 78 proceeding is inapplicable here because the challenged agency decision is legislative in nature in that it applies across the board to all hospitals providing care to "straddle patients.” In support of this position, plaintiff cites a line of cases holding that article 78 does not lie to challenge a legislative act
 
 (e.g., Bryant Ave. Tenants’ Assn. v Koch,
 
 71 NY2d 856;
 
 Matter of DuBois v Town Bd.,
 
 35 NY2d 617;
 
 Matter of Kovarsky v Housing & Dev. Admin.,
 
 31 NY2d 184;
 
 Matter of Overhill Bldg. Co. v Delany,
 
 28 NY2d 449). However, despite the unquestionable validity of this line of cases, we conclude that further analysis is necessary because there remains some confusion as to what constitutes a "legislative act”
 
 (compare, Press v County of Monroe, supra,
 
 at 703-704,
 
 with id.,
 
 at 704-706 [Jasen, J., dissenting],
 
 and Sol-nick v Whalen, supra,
 
 at 231;
 
 see,
 
 8 Weinstein-Korn-Miller, NY Civ Prac j| 7801.02, at 78-11), and, consequently, the formula on which plaintiff relies is insufficient to resolve the issue presented by plaintiff’s case.
 

 Among the apparent sources of the confusion is
 
 Matter of Lakeland Water Dist. v Onondaga County Water Auth.
 
 (24
 
 *202
 
 NY2d 400), in which the Court held that article 78 was unavailable to challenge a rate decision made by a public benefit corporation charged with the responsibility of regulating the price of water to private customers and water districts. Drawing on the principle that an article 78 proceeding may not be used to review legislative action, the
 
 Lakeland
 
 Court reasoned that "an order of an administrative agency fixing rates is deemed a legislative act, at least where no provision has been made for notice and a hearing”
 
 (id.,
 
 at 407). Inasmuch as the rate determination at issue was not subject to any notice and hearing requirements, the Court concluded, it was legislative in nature and not subject to article 78 review (24 NY2d, at 409).
 

 Lakeland
 
 was followed by
 
 Solnick v Whalen (supra,
 
 at 231-232, and n 3), in which this Court, in an effort to explain that decision, suggested that an agency rate-setting determination may be "legislative” or "administrative” depending upon whether it is an "across-the-board” ruling or is instead determinative only of an "individualized rate[ ] established for a particular litigant”. However, in
 
 Press v County of Monroe (supra),
 
 a case involving a generally applicable rate schedule, the Court simply relegated the analysis in
 
 Lakeland
 
 to a
 
 "cf. ”
 
 citation and did not follow, or even discuss, the
 
 Solnick
 
 distinction. Instead, it referred to an entirely different principle, i.e., that article 78 is not the proper vehicle for challenging the
 
 constitutionality
 
 of a legislative enactment
 
 (see, e.g., Matter of Ames Volkswagen v State Tax Commn.,
 
 47 NY2d 345, 348;
 
 New York Pub. Interest Research Group v Steingut,
 
 40 NY2d 250, 254;
 
 Matter of Merced v Fisher,
 
 38 NY2d 557, 559) and then went on to hold that the rate-setting decision at issue was not "legislative” because it lacked a number of traits that ordinarily characterize enactments of a legislative body (50 NY2d, at 701-704). Despite
 
 Press,
 
 subsequent cases involving rate setting and other types of governmental determinations have relied on the
 
 Solnick
 
 distinction between generalized and individualized decision-making
 
 (see, e.g., Matter of Klein v Axelrod,
 
 54 NY2d 818,
 
 affg
 
 81 AD2d 935;
 
 cf, Eve v Power Auth.,
 
 123 AD2d 532 [relying on
 
 Lakeland
 
 distinction premised on notice and hearing requirements];
 
 but cf., Lenihan v City of New York,
 
 85 AD2d 562,
 
 affd
 
 58 NY2d 679).
 

 Viewed in the proper light, the difficulty in this field seems to lie not in the rationales or results of the salient cases, but rather in the ambiguity of the terminology and the absence of a cohesive analytical structure to lend perspective to the
 
 *203
 
 existing case law. The case law often does not distinguish between true legislative acts and those administrative acts that are deemed "quasi-legislative,” and there has been little reasoned discussion as to why the latter class of acts should necessarily be treated in the same way as the former.
 
 [1]
 
 Moreover, while it may be helpful to consider the distinctions drawn in
 
 Lakeland
 
 and
 
 Solnick
 
 between generalized and individualized decision-making and the existence or nonexistence of a notice-and-hearing requirement, these categories cannot adequately be understood in the legal and historical vacuum in which they are often discussed.
 
 [2]
 

 The maxim that article 78 does not lie to challenge
 
 *204
 
 legislative acts is derived from the separation-of-powers doctrine which made the use of the judiciary’s "prerogative writ” unavailable as a vehicle for challenging an act of a legislative body
 
 (e.g., Matter of Neddo v Schrade,
 
 270 NY 97;
 
 Matter of Long Is. R. R. Co. v Hylan,
 
 240 NY 199;
 
 People ex rel. Trustees of Vil. of Jamaica v Board of Supervisors,
 
 131 NY 468;
 
 see,
 
 McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7801:l, at 25 [1981]).
 
 [3]
 
 That same principle, however, has no application to the quasi-legislative acts of administrative agencies. With respect to those acts, there is no reason why article 78 review in the nature of "mandamus to review” should not be available to the extent that the challenge fits within the language and accompanying gloss of CPLR 7801 and 7803 (3).
 
 [4]
 

 CPLR 7801 provides that the relief historically available by the former writs of certiorari to review, mandamus and prohibition are all available now through proceedings brought under article 78. CPLR 7803 supplements that provision by setting forth "[t]he only questions that may be raised in a proceeding under * * * article [78].” Taken together, these statutes and the body of common law they incorporate are necessarily the prime reference points for determining whether a particular claim against a public body or officer may be brought in the form of an article 78 proceeding. Thus, where a quasi-legislative act by an administrative agency such as a rate determination is challenged on the ground that it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]), a proceeding in the form prescribed by article 78 can be maintained and, as a corollary matter, the four-month Statute of Limitations that ordinarily governs such proceedings is applicable.
 

 To be sure, in most situations, agencies’ generally applicable decisions do not lend themselves to consideration on their
 
 *205
 
 merits under the provisions for mandamus to review, because they concern rational choices among competing policy considerations and are thus not amenable to analysis under the "arbitrary and capricious” standard.
 
 [5]
 
 Nonetheless, there are certainly cases in which even a nonindividualized, generally applicable quasi-legislative act such as a regulation or an across-the-board rate-computation ruling can be challenged as being "affected by an error of law,” "arbitrary and capricious” or lacking a rational basis (CPLR 7803 [3]). The claim raised by plaintiff here presents precisely such a case.
 

 As did the petitioners in
 
 HANYS,
 
 plaintiff here is claiming that defendants’ decision concerning the proper method for computing the reimbursement rate for "straddle patients” was unlawful and arbitrary and capricious in that it had no foundation in the relevant statutes
 
 (see, HANYS,
 
 165 AD2d, at 154-156,
 
 supra).
 
 The nature of plaintiffs claim requires it to convince the court that defendants promulgated a rule affecting hospital rates that represented an irrational construction of the governing statutes. Such a claim is plainly encompassed within the grounds for mandamus to review set forth in CPLR 7803 (3), which include "whether a determination * * * was affected by an error of law or was arbitrary and capricious”
 
 (see also, NYSAC, supra
 
 [claim that rate adjustment regulation was arbitrary because it was not based on empirical facts]). Additionally, since the claim concerns a quasi-legislative act of an administrative agency rather than a true legislative enactment, there is no sound basis for invoking the historical bar precluding use of the prerogative writ as a vehicle for reviewing true legislative acts, even though the regulation in question is indisputably one of general applicability. Accordingly, plaintiffs challenge could have been brought in the form of an article 78 proceeding, and the present action, brought more than
 
 2Vz
 
 years after the July 3, 1989 letter advising of defendants’ policy was sent, was untimely.
 

 We note that our holding with regard to the Statute of Limitations question presented here is in accord with the public policies identified in
 
 Solnick v Whalen (supra,
 
 at 232) and reiterated in
 
 Press v County of Monroe (supra,
 
 at 704). A rule that requires those subject to regulatory decisions such as
 
 *206
 
 Medicaid rate-making to bring their challenges promptly facilitates rational planning by all concerned parties and ensures " 'that the operation of government [will] not be trammeled by stale litigation and stale determinations’ ”
 
 (Solnick v Whalen, supra,
 
 at 232, quoting
 
 Mundy v Nassau County Civ. Serv. Commn.,
 
 44 NY2d 352, 359 [Breitel, Ch. J., dissenting]).
 

 We are not persuaded by plaintiff’s opposing contention that the policies represented by the decision in
 
 Matter of Jones v Berman
 
 (37 NY2d 42) militate against such a rule because it compels all potentially aggrieved litigants to bring duplicative suits rather than waiting to see what the outcome will be in a pending test case. In
 
 Jones,
 
 the Court held only that a class action is generally an inappropriate vehicle for asserting a claim against a governmental entity, since "where governmental operations are involved” similarly situated parties other than the individual litigant "will be adequately protected under the principles of
 
 stare decisis”
 
 (37 NY2d, at 57;
 
 accord, Matter of Rivera v Trimarco,
 
 36 NY2d 747, 749). By its terms, that holding concerns itself only with the inefficiency of using the class action form when the
 
 prospective
 
 rights of interested nonlitigants can be safeguarded by other means. Nothing in the
 
 Jones
 
 decision suggests that the same policies justify either the use of a long limitations period or the creation of a toll solely to enable aggrieved parties to sit on their existing rights pending the outcome of an early challenge brought by others
 
 (cf., American Pipe & Constr. Co. v Utah,
 
 414 US 538, 554).
 

 Finally, inasmuch as plaintiff had lost the right to challenge the validity of the underlying rate decision through its own inaction, it had no legal basis for its October 1991
 
 post-HANYS
 
 demand for a refund of the moneys that had been recouped pursuant to the recently invalidated "straddle patient” policy. Thus, to the extent that plaintiff’s complaint asserted a timely cause of action based on the refusal of that demand, the claim was lacking in substantive merit and was properly rejected. We decline to adopt plaintiff’s contention that equal protection principles guarantee it the same relief as was afforded to the members of the Hospital Association of New York, all of whom received refunds after the
 
 HANYS
 
 decision was handed down. Since the Hospital Association was a party in
 
 HANYS
 
 and had standing to represent its members, defendants could rationally distinguish between those members, whose rights had been adjudicated in
 
 HANYS,
 
 and plaintiff, a nonparty whose rights had not been addressed in
 
 *207
 
 that or any other judicial proceeding. Plaintiffs argument that its property was taken without just compensation is equally meritless, as is its contention that the
 
 HANYS
 
 judgment itself required that defendants give refunds to all affected hospitals. A plain reading of that judgment demonstrates that it granted relief only to the petitioners in the
 
 HANYS
 
 proceeding and to the represented member hospitals.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the judgment of the Supreme Court and, as modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order modified, etc.
 

 [1]
 

 . Indeed, it is the failure to recognize the critical distinction between true "legislative” acts of legislative bodies and the quasi-legislative acts of administrative bodies that renders the Court’s syllogism in
 
 Matter of Lake-land Water Dist. v Onondaga County Water Auth.
 
 (24 NY2d 400, 409,
 
 supra)
 
 fundamentally flawed.
 

 [2]
 

 . The
 
 Solnick
 
 distinction between individualized and across-the-board administrative rate determinations may be viewed as consistent with, or at least overlapping, the
 
 Lakeland
 
 distinction premised on the presence or absence of a provision for advance notice and a hearing, since notice and hearing requirements are often associated with decision-making aimed at individual rights. In the article 78 context, however, it is important to recognize that there are different types of hearings with different legal consequences. Evidentiary hearings that are constitutionally required and have some of the characteristics of adversary trials, including cross-examination, result in "quasi-judicial” determinations that are subject to article 78 review in the nature of certiorari, where the "substantial evidence” inquiry is applicable
 
 (see, cg., Matter of Older v Board of Educ.,
 
 27 NY2d 333;
 
 see generally,
 
 McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7801:2, at 26-27 [1981]). Hearings that are not required as a matter of due process, in contrast, result in what have been termed "administrative” determinations, which are subject to review only by mandamus and are governed by the "arbitrary and capricious” standard (McLaughlin,
 
 op. cit.,
 
 at 28-29). This class of hearings, which may result in either individualized or across-the-board determinations, can, in turn, be divided into at least two separate categories: (1) those in which an agency or body will give notice to either the public at large or the affected segments of the public and will thereafter hold a nonevidentiary public hearing and (2) those in which an agency will give notice to the individual regulated concerns and afford them an opportunity to be heard, again in a nonevidentiary forum. In both of these instances, the resulting determination is usually deemed "quasi-legislative” and is reviewable, if at all, by mandamus to review. Because of this variety in the types of notice and hearings that may be held,
 
 Lakeland’s
 
 reference to "notice and hearing” as a means of distinguishing reviewable administrative acts from those that are immune from article 78 review is, at best, misleading. Indeed, as noted, in most cases where "provision has been made for notice and a hearing” (24 NY2d, at 407,
 
 supra),
 
 the resulting determination is quasi-judicial and the availability of mandamus to review is irrelevant.
 

 [3]
 

 . Of course, in a proper case, other means may exist to challenge true legislative enactments on the grounds that they are unconstitutional, ultra vires or adopted in violation of lawful procedure
 
 (see, e.g., Matter of Save the Pine Bush v City of Albany,
 
 70 NY2d 193, 202;
 
 Matter of Ames Volkswagen v State Tax Commn., 4tl
 
 NY2d 345,
 
 supra).
 

 [4]
 

 . The questions set forth in CPLR 7803 (1) and (2) are generally applicable only to proceedings in the nature of mandamus to compel and prohibition, respectively
 
 (see,
 
 McLaughlin,
 
 op. cit.,
 
 CPLR C7803:l, at 331 [1981]). The question set forth in CPLR 7803 (4) pertains only to certiorari proceedings to review quasi-judicial determinations (McLaughlin, op.
 
 cit.; see,
 
 n 2,
 
 supra).
 

 [5]
 

 .
 
 This circumstance may well have been what the
 
 Solnick
 
 Court had in mind when it distinguished between across-the-board determinations and those that affected only identified individuals (49 NY2d, at 231,
 
 supra).