OPINION OF THE COURT
Dan Lamont, J.
Petitioner National Fuel Gas Distribution Corporation brings this CPLR article 78 proceeding seeking a judgment annulling an order issued by respondent Public Service Commission (PSC) on September 28, 2004, in case No. 04-G-0718 — which order extended and modified certain programs without holding a hearing, and allegedly in violation of petitioner’s First Amendment right to free speech. Respondent PSC has filed an answer denying the petitioner’s contentions. Petitioner has filed a reply thereto. Pursuant to the order to show cause issued herein on October 26, 2004 (McNamara, J.), respondent PSC was temporarily restrained from enforcing its September 28, 2004 order requiring National Fuel to continue the Competition Outreach & Education (O&E) program.
Background
Petitioner National Fuel is a “gas corporation” as defined in the Public Service Law and in the Transportation Corporations Law serving natural gas customers in New York State. In 1998, National Fuel entered into a two-year rate settlement agreement which was approved by the PSC (Case No. 98-G-1291, issued Oct. 21, 1998). In 2000, the parties negotiated another settlement agreement (Case No. 00-G-1495, issued Oct. 23, 2000). Continued negotiations by the parties subsequently led to the 2002 Joint Proposal to Achieve a Comprehensive Restructuring of the Rates and Services of National Fuel Gas Distribution Corporation (Case No. 00-G-1858, dated Jan. 18, 2002) designed to foster a competitive environment in the natural gas business. The 2002 Joint Proposal also contains assistance provisions for low-income, elderly and disabled customers. On April 18, 2002, the PSC adopted the Joint Proposal. The terms of the Joint Proposal were extended for an additional year by the par *586 ties pursuant to a Joint Proposal to Extend Terms of Rate Plans dated July 25, 2003 — which was adopted by the PSC on September 18, 2003.
The Joint Proposal extension continued the various programs and features of the previous plan with one major change: the provision for the sharing of earnings would continue beyond September 30, 2004 until it was changed or otherwise addressed in a subsequent proceeding. National Fuel contends that it accepted the terms of the PSC order adopting the Joint Proposal to Extend Terms with the understanding that all of the programs at issue in this proceeding would expire on September 30, 2004. Respondent PSC contends that the programs were extended without a termination date being specified— notwithstanding the fact that the Joint Proposal agreement was continued for another year until September 30, 2004. Specifically, the Competition Backout Credits (CBC) program “would be readopted through September 30, 2004, or until unbundled rates are implemented in the Unbundling Track of Case 00-0504, the Competitive Markets Case.”
Petitioner National Fuel challenges the continuation of: (1) the Low-Income Residential Assistance (LIRA) program, which provides for up to 30,000 eligible customers to receive an annual credit of $100 to their bills with no arrearage forgiveness; (2) the CBC program, which provides for a monthly credit to nonutility resellers that sell gas on National Fuel’s system to customers for whom National Fuel provides only delivery service ($3.30 per month to nonutility resellers which provide their own billing service; and $1.60 per month to nonutility resellers which use National Fuel’s billing service); and (3) the PSC’s O&E program, which requires National Fuel to conduct an advertising campaign to disseminate the following information points: (a) National Fuel is an active participant in the transition to a competitive natural gas market; (b) a choice of natural gas supplier is available; (c) safety, reliability and utility customer service are not affected if a customer switches; (d) National Fuel will continue to provide emergency services to customers regardless of commodity supplier; (e) National Fuel will not discriminate against customers who buy their commodity from another supplier; (f) National Fuel will provide suggestions to customers for making competitive choices and switching gas suppliers; and (g) National Fuel will make customers aware of the benefits and risks when making informed decisions. Petitioner National Fuel does not challenge the continuation of the Elderly, Blind and Disabled program.
*587 On June 2, 2004, National Fuel filed tariff revisions which would have ended the LIRA and CBC programs, and which would have no longer required the O&E program. On June 15, 2004, the PSC issued an order instituting proceedings and notice soliciting comments (Case No. 04-G-0718) (notice No. 1). Notice No. 1 stated that “various provisions of the Rate Plan are scheduled to expire on September 30, 2004” and that the Commission “wishes to evaluate proposals” for continuing the programs at issue in this proceeding “after September 30, 2004 and until the conclusion of the company’s next major rate case.” The conclusion of notice No. 1 stated: “[A] proceeding is instituted to assess the impact of the proposals for maintaining the Rate Plan programs.” On June 23, 2004, notice No. 1 was published in the New York State Register in case No. 04-G-0718 and stated: “Proposed Rule Making No Hearing(s) Scheduled.” Notice No. 1 stated as statutory authority: Public Service Law § 5 (1) (b), §§ 64, 65 (1), (2), (3), (5), § 66 (1), (4), (5), (10), (12), §§ 71 and 72.
On June 30, 2004, the PSC caused another notice (notice No. 2) to be published in the New York State Register in case No. 00-G-1858SA6. Notice No. 2 stated that: “The Public Service Commission is considering whether to approve or reject, in whole or in part, a proposal filed by National Fuel... to make various changes in the rates, charges, rules and regulations contained in its schedule for gas service.” However, notice No. 2 did not include any notification that the O&E program was at issue. Notice No. 2 stated as statutory authority: Public Service Law § 66 (12).
On or about July 15, 2004, National Fuel filed comments asserting reasons why the programs at issue herein should not be continued. On or about August 6, 2004, National Fuel filed additional comments. National Fuel asserted that the PSC could not extend such programs on the basis of comments without an evidentiary hearing; that by the very terms of the joint proposals, such programs were to expire on September 30, 2004; that there was no basis for the amounts set forth, since such amounts were previously arrived at by compromise; that the joint proposal extension barred either party’s use of the settlement terms as precedent; and that the O&E program violates National Fuel’s First Amendment right to free speech. National Fuel asserts that a full evidentiary hearing would enable it to demonstrate why these programs should not be continued. Various other interested parties have urged the continuation of such programs.
*588 On September 28, 2004, respondent PSC, without holding a hearing, issued an order requiring National Fuel to continue such programs past September 30, 2004, until the conclusion of petitioner’s rate case (petitioner estimates that a decision on its rate case may not be issued until July of 2005). The order also modified some of the terms and procedures used for such programs from those contained in the prior joint proposals. On October 13, 2004, the PSC published a notice of adoption in the New York State Register (Case No. 00-G-1858) denying National Fuel’s revisions to its schedule of gas service and canceling the amendments to remove the LIRA and CBC programs. The PSC’s October 13, 2004 order also continued the O&E program.
Discussion
(a) Necessity for a Hearing Issue
Petitioner National Fuel contends that pursuant to Public Service Law § 66 (5) and § 72, the PSC was required to hold an evidentiary hearing prior to continuing the LIRA, CBC and O&E programs. Respondent PSC contends that such action was taken based upon National Fuel’s tariff filing canceling such programs, and that pursuant to Public Service Law § 66 (12) (i), a full evidentiary hearing is not required unless there would be a “major change” in rates. Petitioner contends that PSC’s reliance on Public Service Law § 66 (12) (f) is misplaced and should not be permitted by the court because this basis was not asserted by the PSC during the administrative proceedings and is not part of the administrative record.
Notice No. 1, published on June 23, 2004, certainly did not state that National Fuel had filed any proposal to change rates, but did include the following statutory authority: Public Service Law § 5 (1) (b), §§ 64, 65 (1), (2), (3), (5), § 66 (1), (4), (5), (10), (12), §§ 71 and 72. Notice No. 2, published on June 30, 2004, stated that: “The Public Service Commission is considering whether to approve or reject, in whole or in part, a proposal filed by National Fuel... to make various changes in the rates, charges, rules and regulations contained in its schedule for gas service.” Notice No. 2 based its statutory authority on Public Service Law § 66 (12) only. Based upon the two notices published, and particularly upon notice No. 2, this court holds and determines that the PSC in this CPLR article 78 proceeding is not precluded from asserting Public Service Law § 66 (12) (f) as a basis for its determination. Accordingly, this court rejects petitioner’s contention that the PSC was required to proceed *589 under Public Service Law § 66 (5) and § 72. Notice No. 2 adequately placed petitioner on notice of the statutory basis upon which the PSC was relying — notwithstanding the fact that the June 15, 2004 order and notice No. 1 under a different case number did not. This court holds and determines that the statutory basis was modified and/or clarified in a timely fashion during the administrative process with adequate time for petitioner to respond.
Public Service Law § 66 (12) (f), in part, states:
“Whenever there shall be filed with the commission by any utility any schedule stating a new rate or charge, or any change in any form of contract or agreement or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, the commission may, at any time within sixty days from the date when such schedule would or has become effective, either upon complaint or upon its own initiative, and, if it so orders, without answer or other formal pleading by the utility, but upon reasonable notice, hold a hearing concerning the propriety of a change proposed by the filing. If such change is a major change, the commission shall hold such a hearing . . . After full hearing, whether completed before or after the schedule goes into effect, the commission may make such order in reference thereto as would be proper” (emphasis supplied).
Petitioner contends that the PSC had no authority to rely on Public Service Law § 66 (12) (f) because National Fuel’s tariff filing did not seek to alter the terms of an order, but rather was filed in compliance with an order. This court holds and determines that National Fuel’s tariff filing was sufficient to provide the PSC authority to act pursuant to Public Service Law § 66 (12) (f) as to the LIRA and CBC programs because the filing was a change in form of an agreement related to National Fuel’s rate — canceling the LIRA and CBC programs. This court further holds and determines that the temporary continuation of the LIRA and CBC programs was not a “major change.” Based upon the discretionary nature of a hearing in Public Service Law § 66 (12) (f), unless the change is a “major change,” this court holds and determines that the PSC was not required to hold a full-blown evidentiary hearing to temporarily continue the LIRA and CBC programs until the completion of National Fuel’s main rate case (see, United States v Florida East Coast *590 R. Co., 410 US 224 [1973]; see also, Niagara Mohawk Power Corp. v Public Serv. Commn., Sup Ct, Albany County, Jan. 12, 1996, Toracca, J., letter decision).
Petitioner’s contentions regarding Public Service Law § 66 (5) and § 72 must also be addressed, as the PSC’s reliance upon Public Service Law § 66 (12) (f) was not clearly articulated with regard to the O&E program. Public Service Law § 66 (5) and § 72 each contain the words “after a hearing,” and petitioner asserts that such language requires an evidentiary hearing. In the first instance, this court must recognize that the PSC’s power to administratively set rates is a quasi-legislative function — wherein determinations can be made without evidentiary findings (see, Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y., 76 NY2d 779 [1990]). Administrative hearings can include “those in which an agency will give notice to the individual regulated concerns and afford them an opportunity to be heard ... in a nonevidentiary forum” (see, New York City Health & Hosps. Corp. v McBarnette, 84 NY2d 194, 203 n 2 [1994]).
This court holds and determines that the language contained within both Public Service Law § 66 (5) and § 72 falls squarely within the statutory language as discussed in United States v Florida East Coast R. Co. (supra). As in United States v Florida East Coast R. Co., the PSC provided National Fuel notice and an opportunity to comment prior to temporarily continuing the programs at issue herein. Over the extensive period of time during which the programs operated by virtue of the adoption of the joint proposals, National Fuel, through the notice and comment procedure, should have been in an adequate position to present its claims regarding the feasibility of such programs and the cost amounts for such programs. National Fuel’s policy views toward the programs, their effectiveness, and the adequate funding level are more aptly considered through legislative fact-finding rather than through an evidentiary hearing with cross-examination.
This holding is further buttressed by the Appellate Division, Third Department’s reference in Matter of New York Tel. Co. v Public Serv. Commn. (59 AD2d 17 [3d Dept 1977]) to the Governor’s memorandum of approval for amendments to Public Service Law § 92 (1970 NY Legis Ann, at 480-481) requiring a full public hearing for a “major change.” The Governor in 1970 noted that Public Service Law § 92 would require a full hearing for a major rate change while allowing the PSC to retain the *591 discretion as to whether or not to hold a hearing for smaller rate changes. Public Service Law § 66 (12) (f) contains the mandatory language of “shall hold ... a hearing” for major changes (like Public Service Law § 92 [2] [e]), whereas Public Service Law § 66 (5) and § 72 do not contain such mandatory language.
Based upon all of the foregoing, this court holds and determines that respondent PSC was not required to hold an evidentiary hearing prior to temporarily continuing the LIRA, CBC and O&E programs.
(b) Rational Basis Review
Petitioner asserts in its memorandum of law that respondent PSC’s determination is not supported by substantial evidence or a rational basis in the record. In the absence of any evidentiary hearing, this court’s review is limited to whether the PSC’s determination is supported by a rational basis (Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y., 95 NY2d 40 [2000]) — not the “substantial evidence question” as urged by petitioner. The PSC’s determinations are entitled to deference, due to the highly technical nature of utility rate making and the particular expertise possessed by the PSC, and “may not be set aside unless [such determinations] are without rational basis or without reasonable support in the record” (id. at 48, quoting Matter of Rochester Tel. Corp. v Public Serv. Commn. of State of N.Y., 87 NY2d 17, 29 [1995]; Matter of County of Westchester v Helmer, 296 AD2d 68, 72 [3d Dept 2002]).
Petitioner contends that the PSC’s reasons for continuing the programs at issue herein are obviously based upon the fact of the existence of such programs from the joint proposals, and petitioner further contends that the use of the existence of such programs as a reason for continuing such programs is unlawful. Petitioner refers to the following language in the joint proposal: “[T]his Extension Proposal represents a negotiated resolution of the Company’s rates for the period in question and is intended to be binding only in this proceeding and only as to matters specifically addressed herein.” Petitioner also refers to the PSC’s prior statement that “[p]rior settlement agreements in and of themselves have no legal effect and any suggestions in the Extension Proposal to the contrary are rejected.” This court holds and determines that the PSC’s use of the existence of these programs, even using the compromised funding amounts, as a factor in considering whether to continue such programs does not violate the terms of the agreement or contradict the *592 PSC’s prior statement. The PSC is not limited to considering the data presented and the conclusions recommended by the parties (see, Matter of Keyspan Energy Servs., Inc. v Public Serv. Commn. of State of N.Y., 295 AD2d 859 [3d Dept 2002]; Matter of MCI Telecom. Corp. v Public Serv. Commn. of State of N.Y., 231 AD2d 284 [3d Dept 1997]). The program terms used by the PSC were not binding upon National Fuel — which was given a full and fair opportunity to comment, following notice, upon the continuation of the programs in general, and upon the compromised funding amounts.
Based upon (1) the comments received by the PSC; (2) the substance of the programs under the joint proposals; and (3) the PSC’s inherent knowledge of the policy of moving the utilities market to a competitive market, the PSC temporarily continued the programs. The PSC determined that: (1) the continuation of the LIRA program provides a near-term solution, by providing assistance to low-income customers, for an issue that continues to evolve as the state moves toward a competitive market; (2) the CBC program reduces the cost of other gas suppliers in supplying the commodity and makes competitive energy choices more attractive; (3) the lack of the CBC program would act as a barrier to customers who elect to receive their commodity from another supplier; (4) the CBC program helps promote the PSC’s objectives of fostering competition; and (5) the continuation of the O&E program was necessary to ensure that customers have the necessary information available to make informed decisions regarding their choice of a natural gas supplier. Furthermore, the PSC only temporarily continued these programs as a “stop-gap measure” until National Fuel’s pending major rate case was determined (see, Matter of Long Lake Energy Corp. v Public Serv. Commn. of State of N.Y., 148 AD2d 84 [3d Dept 1989]).
Petitioner also argues that the PSC’s continuation of the programs past September 30, 2004 constituted a change in policy without a change in circumstances. The resolution of whether the joint proposals included: (1) a strict termination of the programs on September 30, 2004 (as urged by petitioner); or (2) only an expiration of the funding for said programs on September 30, 2004 — not the status of the programs (as urged by respondent) — does not involve interpretation of the agreement “through application of common-law contract principles . . . , but only whether a rational basis exists to support the PSC’s interpretation” (see, Matter of Kessel v Public Serv. *593 Commn. of State of N.Y., 193 AD2d 339, 344 [3d Dept 1993]). Regardless of the status of such programs and the intent of the parties relative to the September 30, 2004 date, this court holds and determines that the PSC’s determination to temporarily continue such programs did not constitute a change in policy— the programs continue to promote the PSC’s policy objective of a competitive gas market.
Based upon all of the foregoing, this court holds and determines that the PSC’s determination to temporarily continue the LIRA, CBC and O&E programs was reasonably- and rationally-based (see, Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Matter of County of Westchester v Helmer, supra). The court further finds no error in the PSC’s funding provisions for the temporary continuation of the programs.
(c) Freedom of Speech Issue
Petitioner National Fuel contends that the continuation of the O&E program violates National Fuel’s constitutional right to free speech because such program requires National Fuel to tout to its customers the benefits of choosing other natural gas suppliers. Respondent PSC contends that the O&E program passes constitutional muster. The O&E program provides that the following seven informational points must be disseminated:
“1. The company is an active participant in the transition to competitive natural gas market;
“2. Choice of natural gas supplier is available;
“3. Safety, reliability, and utility customer service are not affected if a customer switches;
“4. The company will continue to provide emergency services to customers regardless of commodity supplier;
“5. The company will not discriminate against customers who buy their commodity from another supplier;
“6. The company will list suggestions on the process of making competitive choices and switching gas suppliers; and
“7. Customers should be aware of the benefits and risks when making informed decisions.”
Petitioner National Fuel opposes respondent PSC’s current process of bringing a competitive market to the natural gas sup *594 ply market in New York State. Petitioner contends that the process jeopardizes the reliability of natural gas supplies and service and offers no guarantee or reasonably-supported suggestion of producing customer savings. Petitioner contends that the O&E program’s language requiring National Fuel to state that “[sjafety, reliability, and utility customer service are not affected if a customer switches” is a non-fact-based, “core” concept which is in opposition to National Fuel’s views and in violation of its freedom of speech rights.
The seven informational points required to be disseminated by National Fuel belie respondent PSC’s claims that the compelled speech is purely fact-based commercial speech. For instance, if “(3) Safety, reliability, and utility customer service are not affected if a customer switches” (emphasis added), then why the requirement that “(7) Customers should be aware of the benefits and risks when making informed decisions”? (Emphasis added.) This court holds and determines that the requirement that National Fuel endorse the safety and reliability of gas utility service, if a customer switches his or her gas supplier — when National Fuel does not believe that the safety and reliability of gas service are unaffected by a switch— constitutes a non-fact-based policy statement. The safety and reliability of the gas supply in a competitive market appears to be an issue in controversy, rather than a fact-based statement. Accordingly, this court holds and determines that the PSC’s O&E program does impinge upon National Fuel’s “core” freedom of speech rights.
Speech is purely commercial when it is an “expression related solely to the economic interests of the speaker and its audience” (Central Hudson Gas & Elec. Corp. v Public Serv. Comm’n of N.Y., 447 US 557, 561 [1980]). Because commercial speech relates solely to the economic interests of the speaker and its audience, speech does not retain its “commercial character when it is inextricably intertwined with otherwise fully protected speech.” (Riley v National Federation of Blind of N.C., Inc., 487 US 781, 796 [1988].) Where commercial speech and “core” speech are inextricably intertwined, the courts “cannot parcel out the speech, applying one test to one phrase and another test to another phrase.” (Id.) The Supreme Court has held that the test for fully protected expression should be applied to such speech. (Ibid.) In determining the level of scrutiny to apply to a compelled statement, the courts must evaluate “the nature of the speech taken as a whole and the effect of compelled statement thereon.” (Id.)
*595 National Fuel enjoys the same First Amendment freedom of speech protections afforded an individual unless the speech at issue is deemed “commercial speech.” If the speech at issue is “commercial,” the PSC’s required statements must further a “substantial” governmental interest; the order must advance such interest; and the order must be narrowly tailored in doing so (Central Hudson Gas & Elec. Corp. v Public Serv. Comm’n of N.Y., supra at 566). If the speech at issue is deemed “core” speech, the PSC’s required statements must place “(i) a reasonable time, place, or manner restriction”; must constitute “(ii) a permissible subject-matter regulation”; and must be “(iii) a narrowly tailored means of serving a compelling state interest.” (Consolidated Edison Co. of N.Y. v Public Serv. Comm’n of N.Y., 447 US 530, 535 [1980].)
Regardless of whether the compelled speech at issue herein is considered “commercial” speech or “core” speech, this court holds and determines that the O&E program as ordered by the PSC is not narrowly tailored under either standard. The O&E program’s requirement that National Fuel conduct a multimedia campaign using radio messages and billboards is far broader than necessary to reach the utility’s customers — which could effectively be done through bill inserts alone. Accordingly, this court holds and determines that the O&E program as ordered by the PSC, in its present form, violates petitioner National Fuel’s freedom of speech rights.
This court notes that petitioner National Fuel in its reply brief at page 25 states:
“Petitioner particularly objects to the fact that the Commission is targeting National Fuel to conduct a wide-spread multi-media campaign. The Company already voluntarily communicates the very ‘factual information’ that Respondent described on page 41 [szc 42] of its brief, and has no objection to continue doing so on its web site and in bill inserts.” (Emphasis supplied.)
In light of petitioner National Fuel’s voluntary compliance with much of the compelled speech contained within the O&E program, this court is reluctant to “throw the baby out with the bath water.” This court holds and determines that respondent PSC can compel the petitioner National Fuel to disseminate the following fact-based commercial speech informational points:
“(1) National Fuel is an active [albeit unwilling] participant in the transition to competitive natural *596 gas market;
“(2) Choice of natural gas supplier is available; . . .
“(4) National Fuel will continue to provide emergency services to customers regardless of commodity supplier;
“(5) National Fuel will not discriminate against customers who buy their commodity from another supplier;
“(6) National Fuel will list suggestions on the process of making competitive choices and switching gas suppliers; and
“(7) Customers should be aware of the benefits and risks when making informed decisions.”
Therefore, this court holds and determines that petitioner National Fuel’s application that this court grant a judgment annulling that portion of respondent PSC’s order temporarily continuing the O&E program should be and the same is hereby denied. This court holds and determines that the temporary restraining order contained in the order to show cause signed October 26, 2004 — restraining respondent PSC from enforcing the terms of its order issued on September 28, 2004 insofar as such order directed the continuation of the O&E program operated by petitioner — should be and the same is hereby vacated. However, the court hereby grants petitioner an injunction prohibiting respondent PSC: (1) from requiring petitioner National Fuel to conduct a widespread multimedia campaign; and/or (2) from requiring petitioner National Fuel to state that “[sjafety, reliability, and utility customer service are not affected if a customer switches.”
Conclusion
This court holds and determines that the portions of the petition challenging respondent PSC’s temporary continuation of the LIRA and CBC programs should be and the same are hereby denied and dismissed without costs. This court further holds and determines that the portion of the petition challenging the temporary continuation of the O&E program should be and the same is hereby granted in part, and that the PSC’s determination temporarily continuing the O&E program should be and the same is hereby modified to delete any requirement that National Fuel conduct any widespread multimedia campaign and/or any requirement that National Fuel state that “[sjafety, reliability, and utility customer service are not affected if a customer switches.”
*597 This court holds and determines that the temporary restraining order contained within the order to show cause should be and the same is hereby vacated based upon the determinations made herein and petitioner National Fuel’s voluntary compliance with the O&E program by communicating “factual information” to consumers on its Web site and in bill inserts; however, petitioner National Fuel is granted an injunction prohibiting respondent PSC: (1) from requiring petitioner National Fuel to conduct a widespread multimedia campaign; and/or (2) from requiring petitioner National Fuel to state that “[s]afety, reliability, and utility customer service are not affected if a customer switches.”
This memorandum shall constitute both the decision and judgment of the court. All papers, including this memorandum and judgment, are being returned to the respondent PSC’s attorney. The signing of this memorandum and judgment shall not constitute entry or filing under CPLR 2220. Legal counsel are not relieved from the applicable provisions of that section respecting filing, entry and notice of entry.
It is adjudged that the petition is granted in part and respondent PSC is hereby enjoined from requiring petitioner National Fuel to conduct a widespread multimedia campaign as a component of the O&E program and the respondent PSC is hereby enjoined from requiring petitioner National Fuel to state that “[s]afety, reliability, and utility customer service are not affected if a customer switches” as a component of the O&E program; and it is further adjudged that the remaining contentions in the petition are hereby denied and dismissed.