Matter of Williams v New York State Div. of Human Rights (2025 NY Slip Op 51686(U))

[*1]

Matter of Williams v New York State Div. of Human Rights

2025 NY Slip Op 51686(U)

Decided on October 22, 2025

Supreme Court, Westchester County

Pulver, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 22, 2025

Supreme Court, Westchester County

In the Matter of the Application of Khalil T. Williams, Petitioner, For a Judgment Pursuant to Article 78 of the Civil Practice Law and Rules

against

New York State Division of Human Rights and NIKE RETAIL SERVICES, INC., Respondents.

Index No. 2941/2025

Khalil T. Williams

Petitioner, Pro Se

New York State Division of Human Rights

One Fordham Plaza, Fourth Floor

Bronx, New York 10458

Attn: Marilyn Balcacar, Esq. (via email)

Littler Mendelson, P.C.

Attorneys for Nike Retail Services, Inc.

900 Third Avenue

New York, New York 10022

Attn: Anat Maytal, Esq. (via email)

Sheralyn Pulver, J.

Petitioner, Khalil T. Williams ("Petitioner"), moves for relief pursuant to Executive Law ("EL") § 298 and Civil Practice Law and Rules ("CPLR") Article 78 seeking to annul and vacate a determination by the New York State Division of Human Rights ("DHR"), which found no probable cause to believe that Petitioner was unlawfully discriminated against or retaliated against by his former employer, Nike Retail Services, Inc. ("Nike"). DHR and Nike have each answered the petition and asserted affirmative defenses. For the reasons set forth below, the Court now denies the Petition.

The Court read and considered the following papers filed by the parties in making its decision:

• Notice of Petition, Verified Petition with Exhibits A-I, Request for Judicial [*2]Intervention, and Affidavits of Service.

• Verified Answer by Respondent DHR with Exhibit A, Affirmation of Service, and Administrative Record.

• Verified Answer by Respondent Nike with Exhibit A, and Certificate of Service.

• Email Reply by Petitioner.

Facts

On October 11, 2024, Nike terminated Petitioner's employment at its Scarsdale, New York, retail store. Nike issued a termination letter to Petitioner that cited as the reasons for the termination Petitioner's alleged failure to meet performance expectations for his position and violation of attendance policies.

On October 22, 2024, Petitioner filed a complaint with DHR alleging unlawful discriminatory practices and retaliation by Nike. Petitioner alleged, in pertinent part, that

Nike had subjected [Petitioner] to unlawful discriminatory practices relating to employment because of disability (asthma) and retaliation for opposing discrimination in violation of the Human Rights Law.

(Petition, ¶ 4). Petitioner submitted the DHR complaint with a standardized form that requested information about Petitioner, his employment, the bases of his claims, and an extended space for a detailed narrative description of the allegations.[FN1]

Upon filing of Petitioner's complaint, DHR contacted Petitioner in writing to confirm receipt of his complaint and to provide information concerning the complaint procedures. Because Petitioner had alleged that Nike violated the Americans with Disabilities Act ("ADA") in addition to the New York State Human Rights Law, DHR also forwarded the complaint to the federal Equal Employment Opportunity Commission ("EEOC") for dual-filing purposes.

The investigation by DHR proceeded as follows:

DHR sent the complaint to Nike with instructions for Nike to submit a written response to the allegations along with any supporting documentation. Nike, through counsel, submitted an eight-page response in letter form, together with exhibits consisting of Nike HR policies and Petitioner's signed acknowledgment of receipt of the policies.

DHR requested that Petitioner submit a written reply or rebuttal to Nike's response. Petitioner submitted a detailed thirteen-page reply in letter form, along with copies of several text message exchanges as exhibits.

DHR requested that Petitioner submit copies of all pertinent documents and records, correspondence, complaints made to Nike HR, and performance evaluations. In response, Petitioner submitted records consisting of his most recent pay stub, the termination letter, and [*3]numerous text message and email exchanges between Petitioner and Nike personnel.

DHR requested that Nike's counsel submit copies of all pertinent documents and records, correspondence, Petitioner's performance evaluations and warnings, performance expectations, Petitioner's internal complaints to Nike HR and outcomes, as well as certain Nike employee policies. Nike, through counsel, produced 558 pages of records in response.

In addition, the assigned DHR investigator conducted a telephone interview with Petitioner. DHR also obtained written statements from three witnesses in support of Petitioner's complaint.

Upon completion of its investigation, DHR prepared a six-page document entitled Final Investigation Report and Basis of Determination ("FIRABOD"), dated January 9, 2025 (see Ex. A to DHR's Answer). This report summarized the parties' positions, the investigator's findings upon review of the submitted records and the interview of Petitioner, and the basis for DHR's determination. In brief, DHR determined that the record evidence did not support a finding of probable cause that Nike discriminated against Petitioner because he had asthma or that Nike retaliated against Petitioner for engaging in a protected activity (see id.).[FN2]

The FIRABOD was followed by DHR's Determination and Order After Investigation (hereinafter, the "Determination"), which summarized the evidence, DHR's conclusions and the reasons therefor, and it ordered Petitioner's complaint dismissed. The Determination was dated January 31, 2025, and notes that it was served upon the parties on April 18, 2025. The Determination also contained instructions for pursuing judicial review and for requesting a further review by the EEOC (see id.).

Discussion

By this proceeding, Petitioner seeks review of DHR's Determination on the alleged grounds that it was arbitrary and capricious and constituted an abuse of discretion (see Petition, ¶ 7). Petitioner also alleges that the Determination was not supported by substantial evidence in the record (id.). However, to the extent that Petitioner means to raise the substantial evidence issue set forth in CPLR § 7803(4), that is inapplicable here as the Determination was not made as a result of a hearing.

A. Standard of Review

In an Article 78 proceeding in the nature of mandamus to review, the Court must ascertain whether the challenged determination was arbitrary and capricious, affected by an error of law, made in violation of lawful procedure, or an abuse of discretion (see CPLR § 7803[3]; Scherbyn v Wayne-Finger Lakes Bd. of Co-op. Educ. Servs., 77 NY2d 753, 757-58 [1991]; New York City Health and Hosp. Corp. v McBarnette, 84 NY2d 194, 204 [1994]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v. Calogero, 12 NY3d 424, 431 [2009]; see also Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester [*4]County, 34 NY2d 222, 231 [1974]). "If the court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency" (Matter of Peckham, 12 NY3d at 431; see also McCollum v City of New York, 184 AD3d 838, 839-40 [2d Dept. 2020]).

In a proceeding stemming from a determination made by DHR from an underlying Human Rights Law complaint, the reviewing court must accord considerable deference to DHR's determination and generally may not substitute its own judgment for that of DHR (see Matter of Bd. of Educ. Of Farmingdale Union Free Sch. Dist. v New York State Div. of Human Rights, 56 NY2d 257, 261 [1982]; Matter of Sidoti v New York State Div. of Human Rights, 212 AD2d 537, 538 [2d Dept. 1995]). As the Court of Appeals has held, "[DHR]'s expertise in evaluating discrimination claims and formulating appropriate remedies may not be lightly disregarded in view of its wide discretion, legislatively endowed, to weigh and assess the conduct of the parties and to reach conclusions based on what is fairly inferable from the facts" (State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd., 48 NY2d 276, 284 [1979]).

Here, the saliant question is whether the Determination comported with all relevant provisions of EL Article 15 (the Human Rights Law). The procedures applicable to the underlying matter are set forth in EL § 297. Under EL § 297(1), any person who claims to be aggrieved by an unlawful discriminatory practice may file a formal complaint with DHR. Within 180 days after such a complaint is filed, DHR must make an initial determination as to whether it has jurisdiction and "whether there is probable cause to believe that the person named in the complaint . . . has engaged or is engaging in an unlawful discriminatory practice" (EL § 297[2]). Importantly, only those practices specified in EL §§ 296 through 296-d constitute an "unlawful discriminatory practice" for purposes of this procedure under the Human Rights Law (see EL § 292[4]). If DHR finds that such probable cause does not exist as to any named respondent, the complaint as against that respondent must be dismissed (see EL § 297[2][a]). DHR is required to conduct a hearing only if the underlying complaint is not so dismissed (see Matter of Patel v New York State Div. of Human Rights, 212 AD2d 715, 716 [2d Dept. 1995]).

Before determining whether there is probable cause to believe that an unlawful discriminatory practice took place, DHR must promptly and fairly investigate the complainant's claims (see Soellner v State Div. of Human Rights, 100 AD2d 876, 877 [2d Dept. 1984]; EL § 297[2][a]). DHR has the discretion to determine the method of investigation most suitable for a particular case, provided that the complainant is afforded the opportunity to rebut any evidence submitted by the respondent (see id.; Brown v State Human Rights Appeal Bd., 73 AD2d 606, 606-07 [2d Dept. 1979]; 9 NYCRR § 465.6[b]).

A finding by DHR of no probable cause is appropriate "only if it appears that virtually as a matter of law the complaint lacks merit" (Matter of Robertson v State of New York, 240 AD2d 504, 504 [2d Dept. 1997]). A determination made by DHR to dismiss a complaint for lack of probable cause may not be annulled unless it is found to be arbitrary or capricious or lacking a rational basis (see Matter of Sidoti, 212 AD2d at 538; Matter of Mendoza v State Div. of Human Rights, 74 AD2d 508, 509 [1st Dept. 1980]).

B. Disability Discrimination Claim

It is an unlawful discriminatory act under the Human Rights Law, in relevant part, for an employer to terminate or to otherwise discriminate against an employee because of the [*5]employee's disability (see EL § 296[1][a]). To establish a prima facie discrimination claim, a complainant must establish the following elements: (1) membership in a protected class; (2) that the complainant was qualified to hold the position; (3) that the complainant suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination (see Ellison v Chartis Claims, Inc., 178 AD3d 665, 667 [2d Dept. 2019]). The burden would shift to the employer to rebut any presumption of discrimination only if the complainant first establishes a prima facie case (see Ferrante v American Lung Assn., 90 NY2d 623, 629 [1997]).

As its reason in the Determination for finding no probable cause as to Petitioner's disability discrimination claim, DHR cited insufficient evidence of a nexus between Nike's alleged conduct and Petitioner's asthma diagnosis. The Determination notes,

Initially, Complainant points to no pattern of conduct that raises an inference of unlawful discrimination. However, Complainant states he has asthma, and [that] it has been determined the asthma was exacerbated by the toxic environment created by his supervisor, Mr. Martinez. Complainant has pointed to no negative remarks about or references to his disability to support a causal connection between Complainant's protected characteristics and the treatment he alleged was discriminatory.

(Determination at p. 2). The Determination also concluded that the evidence did not support any claim that Nike failed to accommodate his medical needs as all but one medical leave request submitted by Petitioner were approved, and the one not approved was due to Petitioner's failure to provide an updated medical certification (see id.).

Nothing in the record before this Court contradicts DHR's conclusion or suggests that it was arbitrary or capricious. Even accepting as true Petitioner's contentions that he had asthma, that Nike was aware that he had asthma, and that his asthma worsened as a result of a toxic work environment created by his supervisor, those facts alone would not necessarily give rise to an inference that Nike discriminated against and ultimately terminated Petitioner because of his asthma (see EL § 296[1][a]). Accordingly, this Court cannot conclude that the Determination, with respect to Petitioner's disability discrimination claim, lacked a sound basis in reason or was made without regard of the facts (see Matter of Peckham, 12 NY3d at 431; Matter of Sidoti, 212 AD2d at 538). Therefore, it must be upheld (see id.; Matter of Mendoza, 74 AD2d at 509).

C. Retaliation Claim

With respect to Petitioner's retaliation claim, it is unlawful under the Human Rights Law for an employer to terminate or to otherwise discriminate against an employee "because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article" (EL § 296[1][e]). To establish a prima facie case of retaliation, a complainant must show: (1) the complainant engaged in a protected activity; (2) the employer was aware of such protected activity; (3) the complainant suffered an adverse employment action based upon the activity; and (4) there is a causal connection between the protected activity and the adverse employment action (See Forrest v Jewish Guild for the Blind, 3 NY3d 295, 312-13 [2004]; Ellison, 178 AD3d at 667).

Only activities related to opposing or complaining about statutorily prohibited [*6]discrimination are considered "protected activities" for purposes of retaliation under the Human Rights Law (see EL § 296[1][e]; Forrest, 3 NY3d at 313). Any complaint by an employee of generalized harassment or other mistreatment or misconduct, not specifically relating to a discriminatory practice under EL § 296, is not a "protected activity" (see Forrest, 3 NY3d at 313 n 11; Diluglio v Liberty Mutual Group, Inc., 230 AD3d 643, 645-46 [2d Dept. 2024]; Brunache v MV Transp., Inc., 151 AD3d 1011, 1013-14 [2d Dept. 2017]).

As to its finding of no probable cause in connection with Petitioner's retaliation claim, the Determination states the following:

Retaliation for acts unrelated to unlawful discrimination is not covered under the New York State Human Rights Law. In this case, when asked to specify the reasons for why he believed that Respondent retaliated against him, Complainant said that Mr. Martinez learned that Complainant had reported him for sleeping while on duty . . . Complainant has not produced sufficient evidence to support that he opposed activity prohibited under the Human Rights Law. Absent evidence that he engaged in a protected activity within the meaning of the Human Rights Law, Complainant cannot sustain a claim of retaliation for opposing unlawful discrimination.

(Determination at p. 2).

Petitioner alleges that his supervisor at Nike, Mr. Martinez, retaliated against him for reporting misconduct, which Petitioner contends was a protected activity (see Petition, ¶ 8). However, the misconduct reported by Petitioner consisted of instances of Mr. Martinez arriving late to work and sleeping on the job (see Petition, ¶ 8[k]). The Petition is devoid of any allegation that Petitioner had reported any instances of Mr. Martinez engaging in an unlawful discriminatory act specifically proscribed under EL § 296. As such, Petitioner does not sufficiently allege that he engaged in a "protected activity" for purposes of his retaliation claim (see EL § 296[1][e]; Forrest, 3 NY3d at 313; Diluglio, 230 AD3d at 645-46; Brunache, 151 AD3d at 1013-14).

Nor did Petitioner allege in his original complaint to DHR that he had reported or complained of any unlawful discriminatory acts. Notably, the DHR complaint form contained a preprinted section with the following instruction: "Please specify what you did to oppose discrimination or how you engaged in protected activity." Petitioner's response was as follows: "5/14/24 First of many complaints made to Nike HR." Petitioner then expounded on this in the detailed narrative section of the complaint form. There, the complaints that Petitioner described having made on May 14, 2024, as well as on June 13, June 14, and September 10, 2024, were related solely to Mr. Martinez sleeping at work. Nike's response to the DHR complaint, as well as Petitioner's reply, further reflected that Petitioner's complaints had been related to Mr. Martinez sleeping on the job or retaliating against Petitioner for having reported same.

Therefore, the Court finds that DHR appropriately concluded that Petitioner's retaliation claim could not be sustained given the lack of evidence that Petitioner engaged in a protected activity within the meaning of the Human Rights Law (see Forrest, 3 NY3d at 313 n 11; Diluglio, 230 AD3d at 645-46; Brunache, 151 AD3d at 1013-14).

Accordingly, for all the foregoing reasons, it is hereby

ORDERED that the petition (motion sequence #1) is denied, without costs or disbursements; and it is further

ORDERED that the Clerk of the Court shall enter judgment accordingly.

This constitutes the Decision, Order and Judgment of the Court.

Dated: October 22, 2025

White Plains, New York

HON. SHERALYN PULVER

Acting Supreme Court Justice

Footnotes

Footnote 1:The initial complaint and other submissions by Petitioner and by Nike in the underlying matter are contained within the administrative record filed by DHR. With the exception of Nike's document production, these records are not paginated or otherwise easily referenceable for citation. Accordingly, citations to the record are not included for some of the individual documents referenced herein.

Footnote 2:The specific reasons given for these conclusions are summarized below in the Discussion section.